ROCKWELL VS. THE MUTUAL LIFE IINSURANCE COMPANY OF WISCONSIN.

*Life Insurance—Renewal of policy after forfeiture— Waiver of condition—Evidence.*

Action on a life insurance policy. Plaintiff's evidence showed that the assured sent a draft for the amount of a premium past due, and the company collected the draft, and its agent wrote to the assured, "As this has been past due for some time, it would be in accordance with our rules to have a certificate of good health. Wherefore, in reply to this, send us your own certificate to that effect. I do not enclose the renewal receipt, as you do not give your address, and it is very uncertain whether this will reach you." *Held,* that inasmuch as it is doubtful from this evidence, whether the assured understood that his money was received *only on condition* of his furnishing the certificate of good health, oral evidence on the part of the company was admissible, to show the circumstances surrounding the parties; such as, the rules of the company and the powers of its officers in such cases, the familiarity of the assured with them, and his connection with the company as one of its trustees, &c.

APPEAL from the Circuit Court for *Waukesha* County.

Action on a policy of insurance upon the life of John S. Rockwell, plaintiff's husband, who died in February, 1863. Defense, non-payment of the annual premium due June 5, 1862, which, by the terms of the policy, worked a forfeiture. Plaintiff claimed that the policy had been renewed, the premium having been paid to and accepted by the company at a subsequent date ; while the company claimed that such acceptance, and its agreement to renew the policy, were conditioned upon its being furnished with a certificate of the good health

Rockwell vs. The Mutual Life Insurance Company of Wisconsin.

of the person whose life was insured; which certificate was not furnished.

It appears that Mr. Rockwell resided in Oconomowoc; that in July, and again in August, 1862, the defendant's local agent there called on him for the premium (the first time by direction of the secretary of the company); that after Rockwell's death, the agent wrote to the company informing them thereof; that he received in reply the necessary blanks to prove the loss; and that he made out the proof of loss, and sent it to the company.

On the 30th of September, 1862, Mr. Rockwell, being then in the city of New York, sent the defendant a letter containing a draft for the cash part of the premium over due, and a loan note in the usual form. This was received at defendant's office in Milwaukee on the 6th of October; and on the same day the secretary of the company wrote to Mr. Rockwell acknowledging the receipt of said draft and notes, and adding: "As this has been past due for some time, it would be in accordance with our rules to have a certificate of good health. Wherefore, in reply to this, please send us your own certificate to that effect. I do not enclose the renewal receipt, as you do not give your address, and it is very uncertain whether this will reach you or not, and I have written to Oconomowoc acknowledging receipt of money also. Where shall I send you the receipt?" The letter addressed to Mr. Rockwell at Oconomowoc, after acknowledging the receipt of the draft and note, was in these words: "As this is past due some time, it will accord with our rules for you to send us a certificate of good health, and in your case will be satisfied with your own. You did not instruct me where to send renewal receipt, and so I have not enclosed it." It appears that shortly after the receipt of Rockwell's draft, the company had it cashed.

The secretary of the company, as a witness for it, testified that Mr. Rockwell was elected a trustee of said company Jan-

uary 18, 1860, and continued to be a trustee until his death; that on receiving Mr. Rockwell's letter from New York, above mentioned, he (witness) made out the customary renewal receipt, with an indorsement upon it, as a memorandum for his cash. At defendant's request, plaintiff then produced a "renewal receipt" on the policy in suit, made in the usual form, under date October 6, 1862, with the following written across the face thereof, under the same date : "This policy is renewed and put in force from this time, provided the said party is in good health at this time." [Signed by the secretary.] The witness then testified that this receipt was in his hand-writing, and he believed it to be the one he then made out; that he put it into his cash drawer, and then he wrote the two letters to Mr. Rockwell above mentioned ; that this was the receipt referred to in those letters ; that afterwards (on receipt of a letter written in behalf of Mr. Rockwell, by Mr. Hill, his bookkeeper, 17th January, 1863,) he delivered said receipt to D. W. Small, Esq., the local agent of the defendant at Oconomowoc, for Mr. Rockwell, and it was never returned to the company. The receipt was then offered in evidence by defendant, but rejected. The letter above mentioned, written January 17, 1863, by Mr. Hill for Mr. Rockwell, was put in evidence, as follows: "When Mr. J. S. R. left home about the 1st of September last for New York, he called upon you for the purpose of settling for the renewal of his life insurance. Not finding you at your office, he let it remain until he arrived at New York, where he sent you the cash draft $135.50, and note $116.05, for which you acknowledged receipt Oct. 6th, remarking that as it was past due for some time, it would be necessary for him to send a certificate of good health, and that in his case his own would be satisfactory. Mr. R. was taken sick in New York about the middle of October, but recovered sufficiently to enable him to reach home, and for two or three weeks after he returned was quite

well. He intended to go to Milwaukee to see you, but was taken sick again, and has been confined to the house up to this time, and unable to attend to business. He wishes to know whether you consider his insurance good or not. If good, please send the renewal receipt by Mr. D. W. Small, who will hand you this. He will also inform you that the case is as stated to you. Mr. J. S. R. is getting better, though slowly."

The defendant then offered the following evidence: 1. Depositions of a daughter of the deceased, and two physicians resident in New York city, and a Mr. Butler, a merchant also resident in the same city, which tended to prove that on the 30th of September, 1862, Mr. Rockwell was taken sick in that city, and was attended by physicians daily until the 13th of October, when he was able to travel, and returned to his home in Oconomowoc, where he was not again entirely well at any time before his death. Miss Rockwell deposed that her father wrote and mailed the letter to defendant enclosing the draft and note early in the morning of that day; that afterwards he went out and bought a bill of goods for his store in Oconomowoc; and that he was taken down suddenly in the afternoon, previous to which time he had not complained of his health. 2. Oral testimony to the effect that deceased had stated to the witness, after his return from New York, that he became very ill in that city, and the first physician called by him on his first visit, informed him that he could not recover, &c., and that after that he wrote to the defendant company, and sent his draft and note, &c. 3. Certain rules adopted by the officers of the company, published in pamphlet form and distributed to agents and others, being rules relating to the payment of premiums and reviving forfeited policies, in force on the 5th of June, 1862, and until the 5th of June, 1863; among which was the following: "Should a policy be forfeited by neglect to pay the premiums promptly when due, it may be re-instated by consent of the company, the party furnishing at his own

expense proof of being in sound health." All of this evidence was rejected as immaterial. The defendant then read in evidence the following by-laws of the company: " "Sec. 6. The president shall have the general direction and superintendence of the affairs of the company, and in all cases in which duties of the subordinate officers and agents of the company are not specially prescribed by the by-laws or resolutions of the board, they shall obey the orders and instructions of the president. Sec. 7. The president and secretary shall have power to make contracts for insurance of life in conformity with the rules and regulations of the board for the time being."

The court instructed the jury to return a verdict for the plaintiff for the amount claimed. Verdict and judgment accordingly; and defendant appealed.

*Palmer & Hooker*, for appellant:

1. The evidence shows not only that there was no renewal or intention to renew the policy, except upon condition that the company should be furnished with a certificate of health, but also that Rockwell did not understand that his policy was renewed; since in his letter of 17th January, 1863, he wished to know if the company considered his insurance good, not claiming himself that it was; and then he accepted and retained the renewal receipt with the condition written thereon, without objection, and without offering to return it. 2. The evidence does not show any waiver of the condition. Evidence of a waiver must be clear and satisfactory. *Cornell v. Mil. M. Fire Ins. Co.*, 18 Wis., 387, 398; *Lycoming Co. Mut. Ins. Co. v. Schollenberger*, 44 Pa. St., 259; *Trask v. State F. & M. Ins. Co.*, 29 id., 198; *Inland Ins. Co. v. Stauffer*, 33 id., 397: *Smith v. Haverhill M. F. Ins. Co.*, 1 Allen, 297; *Roumage v. Ins. Co.*, 1 Green (N. J.), 110; *Nash v. Union Mut. Ins. Co.*, 43 Me., 343; *Eastman v. Carrol Co. M. F. Ins. Co.*, 45 id., 307; *Edwards v. Baltimore Ins. Co.*, 3 Gill, 176; *St. Louis Ins. Co., v. Kyle*, 11 Mo., 278. Counsel also argued that the court erred in rejecting the evidence offered by defendant.

*Gill & Barber*, for respondent, contended that the defendant having accepted Rockwell's draft, and retained the funds, and the letter of its secretary clearly implying that the usual renewal receipt would have been sent if defendant had known where to send it, defendant could not now set up a *conditional* renewal.　2. That the company considered the policy renewed is also evident from its furnishing blanks for proof of loss, on being informed by its local agent of Rockwell's death.　3. Even if it did require a certificate of health as a condition precedent to the renewal, it afterwards waived this demand by keeping his money after his neglect for several months to perform the condition.　*Sheldon v. Conn. Mut. Life Ins. Co.*, 25 Conn., 220 ; *Bouton v. Am. Mut. Ins. Co.*, id., 550 ; *Ky. Mut. Ins. Co. v. Jenks*, 5 Ind., 97 ; *Buckbee v. U. S. Ins. Co.*, 18 Barb., 541 ; *Ruse v. Mut. Ben. Life Ins. Co.*, 26 id., 556 ; *Trustees &c. v. Brooklyn F. Ins. Co.*, 19 N. Y., 305 ; *Wing v. Harvey*, 27 Eng. L. & E., 140 ; *M'Ewen v. Mont. Co. Ins. Co.*, 5 Hill, 101, 147 ; *Mayer v. Webster et al.*, 18 Wis., 393 ; *Beal v. Park F. Ins. Co.*, 16 id., 241 ; *Keeler v. Niagara F. Ins. Co.*, id., 523 ; 23 N. Y., 511 ; 26 id., 465 et seq.; 2 Parsons on Con. (last ed.), 487.

Dixon, C. J.　The evidence offered in defense should have been received, not as varying the contract of renewal shown by the letter of the secretary of the company which was before us on the former appeal (20 Wis., 335), since for that purpose it would be wholly inadmissible, but as explaining what that contract really was.　That letter was ambiguous.　It was doubtful how Mr. Rockwell ought to have understood it.　Unaided by the light of surrounding circumstances, we could not say that he must have understood from the letter that the policy was not to be renewed unless he furnished the certificate of good health.　The point was thus stated in the opinion :　"But the question is, whether it is certain from the evidence that Mr. Rockwell must have understood, and did un-

derstand, if he exercised ordinary care, *that* the money and the note were received *conditionally.* For if no such information was given him, the policy was renewed by the company's receiving his money and the note. * * * * * * It is not clear to our minds that Mr. Rockwell did or could have understood from the letter that his money was received *only on condition* of his furnishing the certificate of good health." With this uncertainty as to the meaning of the letter, which in one part seems to require the certificate and in another to waive it, evidence of the circumstances surrounding the parties, such as the rules of the company and the powers of its officers in such cases, and Mr. Rockwell's familiarity with them, together with his connection with the company as one of its trustees, seems of the greatest importance for the purpose of explaining the intention of the secretary, and Mr. Rockwell's understanding of the letter; for by these, and especially by the understanding of Mr. Rockwell, the jury must determine whether the policy was unconditionally renewed or not. The principle upon which such evidence ought to be admitted is familiar. *Ganson v. Madigan,* 15 Wis., 153, and authorities there cited; *Prentis₈ v. Brewer,* 17 Wis., 635.

*By the Court.*—Judgment reversed, and a new trial awarded.