BEDARD and another vs. BONVILLE.

*February 26 — March 13, 1883.*

*Court and jury — Construction of building contract.*

By a written contract plaintiffs agreed to finish two stores in a certain manner "and also to finish *the front part of the basement,* with the stairway going up to the second story, and also the outside two cornices," etc. In an action to recover for extra work done on the inside of the front basement wall, it is *held* that the language of the contract is so vague and ambiguous that extrinsic evidence was admissible to aid in its construction, and that upon such evidence it should have been submitted to the jury to determine whether the work in question was covered by the contract or not. Unaided by extrinsic evidence, this court is of the opinion that "the front part of the basement" means not merely the *external front,* but both sides of the front basement wall.

APPEAL from the Circuit Court for *Chippewa* County. The case is stated in the opinion.

For the appellant there was a brief by *Arthur Gough* and *Hollon Richardson*, and oral argument by *Mr. Gough*.

For the respondents the cause was submitted on the brief of *Bingham & Pierce.*

TAYLOR, J.   This action is brought to recover a balance claimed to be due the respondents for work and labor performed by them for the appellant at his request, etc.   The case was first tried in the municipal court, and from that court the case was appealed to the circuit court for Chippewa county, in which latter court the case was tried by a jury and a verdict rendered in favor of the respondents for the sum of $85.   From the judgment rendered on such verdict the defendant appealed to this court.   One of the questions which arose on the trial of the action depended upon the construction of a written contract between the parties, which was introduced in evidence on the trial.   The respondents claimed that there was $50 due to them for the work done under the contract, and $38.50 for work done not covered by the contract, and which they called extra work.   The respondents' evidence as to this extra work was as follows: The respondent *Bedard* testified: "After we had commenced building the counter, *Bonville* told me to make it six or seven feet longer.   I told him our lumber was cut and counter almost made; if I made it longer I wanted pay for it.   He said he would pay for it.   It was worth $10 to make it six or seven feet longer.   *Bonville* directed first how to make it and then had me change it.   We did extra work on the inside of the front of the basement.   We furnished the window casings, and paneled and cased inside the basement, and paneled in the skylight.   *Bonville* told us to do it.  He said, 'I don't know how I shall do that; I have no men.'   I said, 'My job is done.'   *Bonville* said, ' Your job is done; go and

finish it and I will pay for it.' We finished it and furnished the materials. It was worth $25. I considered my job done when the door was up, the windows in, the frames and sash in the front."

Another witness for the respondents testified: " I was helping *Bedard* hang doors when *Bonville* came in and said he wished the basements were ready; they were rented and parties wanted the rooms very bad. *Bedard* said to him, ' I have done all I agreed to do, *Mr. Bonville.*' *Bonville* said, ' Well, go on and fix it and I will settle with you. I will fix it; go on and do the work and I will fix it with you.' I helped work in the basement. I did the extra casing. We did extra work casing the doors and putting on wainscoting and uprights to be lathed on; put casing on the doors and windows; extended the jambs, cased around the alcoves, put in window-sills, and turned the stairs; what we done was worth $20." Upon the question of his promise to pay for this work, or extra work, *Bonville* testified, speaking of what *Bedard* said about it: "Perhaps he did say that he had finished his work; I don't recollect. I told him to go on, and, if it did not belong to him, I would pay for it. I got all the work in the basement done myself, except a part of the front." The following is a copy of the written contract between the parties:

" Articles of agreement made this eighth day of August, 1881, between *Frank Bonville*, of Chippewa Falls, Chippewa county, state of Wisconsin, party of the first part, and *P. Cartier* and *F. Bedard*, of the same place, parties of the second part: Witnesseth, that the said parties of the second part agree to finish, in the same style and same material, both of the stores being built on lot 8, block 21, as the one store now occupied by Chapman & Co., the first floor being laid with hard lumber inside and outside the counters, *and also to finish the front part of the basement, with the stairway going up to the second story*, and also the outside two cor-

nices in front of the store, in same style of Brown-Fletcher block.

"In consideration of the above agreements the party of the first part agrees to pay the parties of the second part the sum of $1,200, to be paid as fast as the work is performed by parties of the second part.

"It is further agreed that the parties of the second part are to finish said work in five weeks after the plastering of the said work on first store is done."

The learned circuit judge, instead of submitting the question of the right of the respondents to recover for this work as extra work not covered by the contract, upon the theory that there was a dispute about it between the parties, and that the defendant made an unqualified promise to pay for the work as extra work if the plaintiffs would go on and do it, instructed the jury as a matter of law that this work on the inside of the front part of the basement was not covered by the terms of the contract, and that the respondents were entitled to extra pay for doing the same. The learned judge, in instructing the jury, said "that the provision of the contract which provides in addition to finishing the store, which was conceded on all hands to refer to the store-room, ' that he should finish the front part of the basement,' I determine as a matter of construction, deeming that it devolves upon me to determine it one way or the other, that it meant the external front or outside of the basement, and under that construction whatever work was done inside did not belong to the proper outside external front of the basement, and would be extra work." This instruction was excepted to by the counsel for the appellant and is alleged as error. On the trial the appellant offered to prove by a witness, who was an architect and familiar with the business of building and contracts relating to that subject, that the work done by the respondents on the inside of the front part of the basement was covered by the terms of the contract. This evidence

was objected to by the respondents and excluded by the court, to which ruling of the court the appellant duly excepted.

The exception to the instruction of the learned circuit judge construing the contract, and the exception to the rejection of the evidence offered as above set forth, are assigned as errors upon this appeal, and are relied upon as causes for reversing the judgment.

If we were called upon to construe that part of the contract which requires the respondents " to finish the front part of the basement," we should be inclined to give the language used a different construction from that given by the learned circuit judge.    We do not think that the words " front part " necessarily mean the " external front part," as was held by the learned judge.    The " front part " might well include both sides of the front wall of the building, and when the respondents, who are carpenters, agreed to furnish the materials and do the work necessary to finish the " front part," so far as the carpenter's work is concerned, it does not seem to us to be unreasonable to hold that they are to do all the necessary work on both sides of the front wall, at least, so as to put it in a condition for the lathing and plastering, and that is all that, as we understand the evidence, the respondents did in this case.    But as it is evident that men unskilled in matters of this kind would differ as to the construction of the terms used in the contract, it is clear that they are in themselves ambiguous and uncertain, and in a limited sense terms of art, and that their meaning may in such cases be explained by the evidence of witnesses skilled in the matters to which they relate.    We think the terms of the contract are so ambiguous that extrinsic evidence may be resorted to for the purpose of giving a proper construction to them.    Such evidence was held admissible by this court in the following cases: *Ganson v. Madigan*, 15 Wis., 144; *Prentiss v. Brewer*, 17 Wis., 636; *Rockwell v. Ins. Co.*, 21 Wis., 548;

*Lyman v. Babcock*, 40 Wis., 503; *Monitor Iron Works v. Ketchum*, 44 Wis., 126–131. In the last case it was held that the words "connected with steam on," in a contract for furnishing and setting up a steam-engine, were or might be words of technical meaning, and that an expert might testify as to their meaning as used in such contract. So the language above quoted in the contract in this case is certainly ambiguous, and may, to a certain extent, be considered words of technical meaning, and are therefore subject to explanation by extrinsic evidence of all the circumstances attending the making of the contract, and also by the evidence of experts familiar with contracts of that nature. Whart. on Ev. (2d ed.), § 972; *Collyer v. Collins*, 17 Abb. Pr., 467.

It is probable that the question asked the witness was objectionable as to its form. The question should have called for the meaning of the language used in the contract as understood by those engaged in the business of building, and it should have been left to the jury to say whether the work done was covered by the contract as so exlpained. We think the language used in this contract is vague and general, and may have divers meanings. Its construction comes, therefore, within the rule laid down by this court, in the very able and satisfactory opinion of Chief Justice Dixon, in the case of *Ganson v. Madigan*, 15 Wis., 144, 154, 155. Upon the whole evidence, the jury, and not the court, are to find what the real meaning of the contract was. In the absence of any such parol evidence, it would probably be the duty of the court to determine for itself what construction it should receive; and in such case as now advised this court is of the opinion that the learned circuit judge gave too strict an interpretation in limiting their meaning to the external front of the basement. We hold that the circuit judge erred in excluding the evidence of the architect offered by the appellant to explain the meaning of the language used in the contract, and also in his construction of the contract, unaided

by any extrinsic evidence as to its meaning. As the judgment must be reversed for these errors, it becomes unnecessary to pass upon the other questions discussed by the learned counsel for the appellant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.