VILAS and others, Appellants, vs. BUNDY and another, Respondents.

*December 16, 1899 — March 20, 1900.*

(1) *Contracts: Ambiguity: Court and jury.* (2-5) *Attorneys at law: Power of trustee to employ: Employment of assistant: Sharing of earnings by attorneys for joint plaintiffs: Incurring expenses.*

1. Where there is no ambiguity in the language of a contract as applied to the undisputed facts, it is the province of the court to interpret it; but where the subject matter of such contract and the circumstances under which it was made may properly be considered in order to correctly determine the meaning the parties gave to its language, and conflicting inferences may reasonably be drawn from such evidence in regard to such meaning, the proper inference should be determined by a jury, and that is true whether the am-

biguity springs from uncertainty in the literal sense of the words themselves or from the application of plain words to the facts.

2. Persons holding the legal title to one half interest in a judgment in trust for others, coupled with a power to control and collect it and divide the proceeds among those interested therein, impliedly possess power to employ attorneys and use all the usual and ordinary means to carry out the purposes of the trust, and to charge the expenses thereof against the fund recovered.

3. An attorney, at his own expense and risk, may employ an assistant to aid him in his professional work for a client, and charge such client with the reasonable value of the entire labor; and that does not militate against the rule that the relation of attorney and client does not imply authority to the former to employ another attorney at the client's expense.

4. If one of two joint plaintiffs employ two attorneys to act jointly in his behalf in the prosecution of a cause, and the other employ one of such attorneys to act for him, an agreement between the attorneys to put their earnings into a common fund for equal distribution does not militate against the right of either to charge and collect of his client the full reasonable compensation for the professional labor undertaken by him for such client and performed personally and by the aid of his assistant and subordinate.

5. The relation of attorney and client, where the attorney has general authority over the subject of his employment, implies authority to such attorney to incur such expenses in the professional undertaking as are usual and reasonably necessary, under all the circumstances, to carry out the object of the employment.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

Action of trover to recover damages upon the following facts:

On June 23, 1888, Luther Cain obtained a judgment against the Minneapolis & St. Louis Railway Company for $4,205.28 damages and costs, on a cause of action for a negligent personal injury. Levi M. Vilas, his attorney, performed the necessary services as such, under a contract entitling him to one half the amount finally recovered. Before anything subsequent to the entry of judgment was done, except the

issuance of an execution thereon which was returned unsatisfied, Mr. Vilas died, and the judgment thereafter remained dormant for nearly five years, it being supposed that it was of little or no value because of the fact that a mortgage, supposed to cover all the judgment debtor's property, was foreclosed about the time such judgment was rendered, but without making Cain a party defendant, and such property thereafter, by judicial proceedings, passed into possession and supposed ownership of a new corporation called the Minneapolis & St. Louis Railroad Company. Soon after the death of Mr. Vilas his administrators obtained from Mr. Cain a paper, evidencing the interest of the estate of the deceased in the judgment, which was worded as follows:

" State of Minnesota,
        County of Scott.     In District Court.

| Luther Cain vs. The Minneapolis & St. Louis Railway Company. | Judgment, June 23rd, 1888. |
|---|---|
| | Damages,          $4,147. |
| | Costs,                58.28 |
| | $4,205.28 |

" For and in consideration of services rendered by the late Levi M. Vilas, deceased, and such as may be rendered in collection of the amount due, by his administrators, I, Luther Cain, the plaintiff in the action above entitled, do hereby sell, assign, and transfer to James W. Lusk, William F. Vilas, and Edward P. Vilas, administrators of the estate of Levi M. Vilas, deceased, all of said judgment for costs and one half the judgment for damages, recovered by me in the district court of Scott county, Minnesota, on the 23rd day of June, 1888, against the Minneapolis & St. Louis Railway Company, being $4,147 damages and $58.28 costs, and do authorize and empower them to proceed to collect the same or so much thereof as may be collectible, to compound, settle, and discharge the said judgment, and the whole thereof, but upon condition that the one-half of all the proceeds ob-

tained or collected over and above the costs shall be paid to
me.   Hereby ratifying and confirming all which said as-
signees as my attorneys may do by virtue thereof.

"Dated May 3rd, 1890.   Witness my hand and seal.

"LUTHER CAIN.  [Seal.]"

In 1894 Mr. Cain wrote to Mr. William F. Vilas, one of the
administrators, in regard to the collection of the judgment,
but not receiving any reply he employed *John B. Fleming,*
one of the defendants, to investigate the matter for him.
*Fleming* corresponded with Mr. Vilas for a considerable
length of time.   Many letters passed between the two in re-
gard to the collection of the judgment.   During such corre-
spondence Mr. Vilas was informed by *Mr. Fleming* of all the
facts, so far as he could discover the same, regarding the
foreclosure of the mortgage and the probabilities of collect-
ing the judgment.   On the part of Mr. Vilas many sugges-
tions were made, and *Fleming* was urged to investigate
diligently for the purpose of finding property not covered
by the foreclosure title.   In answer to a letter written by
*Fleming,* stating that he had employed *Mr. C. T. Bundy,*
one of the defendants, to assist him, Mr. Vilas said that any
arrangement made with *Bundy* at the cost of Cain was all
right, but indicated that he, Vilas, represented the interest
of the estate in the judgment.

The result of the investigation made by defendants was a
discovery, as they supposed, of some property of the old
railway company not covered by the foreclosure, and they
thereupon made due application to the court for the appoint-
ment of a receiver in order to secure the application of such
property to the payment of the Cain judgment.   The peti-
tion was in the name of all parties interested in the judgment
as plaintiffs, William F. Vilas, E. P. Vilas, and J. W. Lusk,
as administrators, being made plaintiffs as representing the
interest of the Vilas estate.

When matters reached this stage, Mr. William F. Vilas

was urged to give sufficient personal attention to the matter to consult with the defendants if the two interests were to go along together.   Up to this time, while Mr. Vilas had made many suggestions, all the real labor in regard to collecting the judgment had been done, and all the expenses borne, by the defendants.   Cain was a very poor man and not able to advance anything even to pay expenses.   Defendants understood from the start that compensation for their work, and expenses as well, was wholly contingent upon collecting the judgment in whole or in part.   About the time the action was commenced for a receiver, defendants succeeded in obtaining a consultation with Mr. William F. Vilas and Mr. E. P. Vilas, representing the Vilas interest in the judgment.   The consultation on the part of the defendants was by *Mr. Bundy*.   The petition for a receiver, or a copy of it, and other papers material to the case, were present, some having been previously sent to Mr. W. F. Vilas by mail and the balance having been brought to the interview by *Mr. Bundy*.   *Mr. Bundy* made a full statement of all the facts as he understood them and of the proceedings he deemed advisable in order to collect the judgment.   Mr. William F. Vilas expressed gratification with the situation and approved of what had been done up to that time.   According to his remembrance of what occurred, the consultation was merely that of lawyers representing friendly interests; and that at the close of it he said to *Mr. Bundy*, "I think I can rely upon you."   According to *Mr. Bundy's* version, the consultation was carried on by him as one of the attorneys having charge of a professional matter with parties interested, or their authorized agents by whom such attorneys were employed.   He testified that at the close of the interview Mr. Vilas said his political duties would prevent his performing any services in the matter, and that he should rely solely on *Mr. Bundy*, the language being, "I represent the Vilas heirs.   Their inter-

est is the same as Cain's.   I believe you will take care of
this case properly and I shall rely wholly on you.   I will
rely entirely on yourself."

Up to the time of this interview the correspondence had
been carried on, on the part of defendants, wholly by *Mr.
Fleming*, but thereafter it was wholly by *Mr. Bundy*.   Many
letters passed between *Mr. Bundy* and Mr. Vilas, the latter
being kept posted as to every step in the proceedings till
the collection was finally made.   During such time the com-
plaint was amended by making the Vilas heirs who were of
age parties plaintiff, and those who were under age plaint-
iffs by a guardian *ad litem*.   That was supposed to be neces-
sary, as it was discovered by *Mr. Bundy* that the estate had
been fully administered and the property assigned to the
heirs.   During such time, also, two hostile actions were com-
menced to foreclose mortgages for the purpose of defeating
the efforts of defendants to collect the judgment, and, to the
knowledge of Mr. Vilas, defendants or *Mr. Bundy*, as coun-
sel with Flandreau, Squires & Cutcheon as attorneys,— who
with the knowledge of Mr. Vilas had been employed as local
attorneys,— appeared and obtained injunctional orders re-
straining proceedings in such actions till the right of plaint-
iffs to a receiver should be determined.   Such right was
finally established.

All the professional services, from the start, were per-
formed by defendants, or on their account, and all the ex-
penses were borne by them.   Soon after the right to a
receiver was established as stated, the claim was collected,
$5,000 being paid to the local attorneys, Flandreau, Squires
& Cutcheon.   They retained $500 for their services and
turned $4,500 over to *Mr. Bundy*, which he disbursed by
paying $1,182.50 to Fleming, of which $322.50 was for ex-
pense of maintaining Cain during the litigation, and $85 for
other necessary disbursements.   Four hundred and fifty dol-
lars was paid to a brother of defendant *Bundy* for legal as-

sistance. Nine hundred and twenty dollars was retained by *Mr. Bundy*, $145 of which being for necessary disbursements. Nine hundred and seventy-three dollars and seventy-five cents was paid to Mr. Cain and a like amount to Mr. William F. Vilas for the Vilas heirs, it being reported at the same time that $1,250 was charged to the Vilas interest in the judgment for attorneys' fees, including $250 retained by the local attorneys. Mr. Vilas, upon receiving the amount indicated, immediately laid claim to one half of the entire sum collected of the railway company, upon the ground that all costs and expenses of making the collection were chargeable to the Cain interest, and that neither of the defendants had authority to represent the Vilas interest. Defendants refused to accede to such claim, and this action was thereupon brought by plaintiffs to recover damages for the money which they claimed had been unlawfully retained by *Mr. Bundy*.

Defendants joined issue by answer, and on the trial evidence was produced establishing, or tending to establish, all the facts stated in the foregoing. As to the money paid for the maintenance of Cain, the evidence tended to show that defendants supposed that his presence might be vital to their success; that the only way to be certain of having him at hand when needed was to pay his board; that he was a cripple, very poor, and entirely unable to maintain himself; and that *Mr. Fleming* personally incurred the liability for the expense of boarding him as a necessary expense in the case, and that the $322 was paid to *Fleming* on that account. There was evidence also to the effect that the services performed by *Bundy* were reasonably worth $2,500 and the services of *Fleming* $1,000. Plaintiffs, by their attorney, conceded liability for one half of the charges of Flandreau, Squires & Cutcheon, and one half of the other expenses except the expenditure for maintaining Mr. Cain during the litigation. Defendants had a written contract with Cain

securing to them one half of his interest as compensation for their services rendered to him.

The amount claimed by plaintiffs at the close of the evidence was $1,161.25, being one half of the $5,000 less $115 for disbursements, $250 on account of the services of Flandreau, Squires & Cutcheon, and $973.75 received from *Mr. Bundy.*

Numerous instructions were requested by plaintiffs' attorney and refused. The jury, on the evidence and the law as given them by the court, found for the defendants a verdict of no cause of action, and judgment for costs was rendered in their favor accordingly, from which this appeal was taken.

*William F. Vilas,* for the appellants.

*T. F. Frawley,* for the respondents.

The following opinion was filed January 9, 1900:

MARSHALL, J. The assignments of error found in the brief of appellants' counsel, made in conformity with the rule on that subject, do not correspond accurately with the divisions made by counsel in the argument that follows. In this opinion we will endeavor to follow closely such argument, instead of the assignments of error, thereby taking up in detail the reasons put forward to support the appeal.

It is first said that no engagement of either defendant as attorney for plaintiffs was proven; that the correspondence between *Fleming* and William F. Vilas indicates clearly that no contract relations were entered into between the parties, and that care was taken to protect the representatives of the Vilas interest in the judgment from any danger of a claim being made by defendants that they were authorized to represent it, by stating in the correspondence that any employment of attorneys to collect the judgment must be at the expense of Cain; that as there was no controversy in regard to what was said between *Mr. Bundy* and Mr. Vilas, it was the duty of the court to say as a matter of law

whether a contract was thereby made, and error to submit the matter to the jury. True, where there is no ambiguity in the language of a contract when applied to undisputed facts, it is the province of the court, only, to interpret it. *Home Mut. Ins. Co. v. Roe*, 71 Wis. 33. It would perhaps be more accurate to say, in the circumstances indicated, that it is the duty of the court to decide whether the language creates contract relations or not, and the nature of such relations; for, strictly speaking, where there is no ambiguity of expression, no dispute about the facts, and no uncertainty of meaning when the language is applied to the facts, there is no use for interpretation or construction. Where there is such use, and it is confined to mere interpretation or construction, the question is undoubtedly one of law for the court alone to deal with; but where, though the literal sense of the language of a contract be plain, it leads to absurd consequences or an unreasonable situation when applied to the facts, so as to render a resort to extrinsic evidence proper in order to determine the real intent of the parties, from which evidence conflicting reasonable inferences may be drawn, then it is proper for a jury to say which is the correct inference, and, under proper instructions, to say what the parties in fact agreed to. It is for the court to say, in such a situation, whether different minds may reasonably differ as to what was in fact intended, and if so, for the jury to say where the truth lies. *Ganson v. Madigan*, 15 Wis. 144; *Prentiss v. Brewer*, 17 Wis. 635; *Rockwell v. Mut. L. Ins. Co.* 21 Wis. 548; Beach, Cont. §§ 743, 744. It follows that if the language used by *Mr. Bundy* and Mr. Vilas when the consultation was had at Madison, the time when it is claimed a definite contract of employment was made, and when it was in fact made if made at all, was ambiguous, and the solution of such ambiguity depended on the circumstances which called the parties together and characterized their transactions, and was not free from reasonable

doubt so far as the pure question of fact was concerned, it was for the jury to say what the parties intended.

In testing the action of the trial court in submitting the case to the jury on the subject of whether contract relations were formed between plaintiffs, or their representatives or trustees, and defendants or *Mr. C. T. Bundy,* within the principle stated, it must not be lost sight of that ambiguity of expression is one thing and ambiguity of meaning is another,— that words may be perfectly plain taken in their literal sense, yet, when applied to the facts, doubt arise as to the sense in which such words were used. Obscurity, which often springs from the consequences of a literal application of the plain, ordinary meaning of words in a contract to the subject matter of it, calls for the light which the settled rules of law shed upon the uncertainty of intention of the contracting parties, the same as when obscurity exists in the language of the contract itself. *State ex rel. Heiden v. Ryan,* 99 Wis. 123. So, if we say that the language used by Mr. Vilas and *Mr. Bundy* is plain and unmistakable, looking at the words used alone, yet if the intent the literal sense of the words indicates be doubtful when such words are applied to all the facts leading up to and characterizing the negotiations between the parties, and the apparent interpretation which both parties gave to their language afterwards, that presents a question for solution by a jury.

Looking at the action of the court in submitting the question above discussed to the jury, assuming that Mr. Vilas possessed authority to bind the plaintiffs or their interest in the Cain judgment, in the light of the evidence it is considered that if error was committed it was in favor of the appellants. *Mr. Bundy* and *Mr. Fleming,* prior to the conversation between the former and Mr. Vilas, under agreement with Cain, performed valuable services to the end that the judgment might be collected. The representatives of

the Vilas interest were under strong moral obligations, at least, to bear the entire expense of the collection. Their claim was originally founded on a contract entitling Cain to one half of the sum collected, clear of all expenses. The legal title to one half of the judgment was assigned to Mr. Vilas and his associates, coupled with a power to control the entire judgment in their discretion, upon condition that Cain should have one half of any sum collected thereon, of the damages, free from expenses incurred by the trustees. Such trustees, nevertheless, for a time at least, left the entire expense of making the collection to be borne by Cain while they retained control over the judgment, except in so far as, on their theory, they sanctioned Cain's employment of attorneys at his own expense to do the work which, if successful, would necessarily inure to the benefit of the plaintiffs as much as to that of Cain. Doubtful, expensive litigation was in prospect. Mr. Vilas, while assuming to represent the plaintiffs' interest, had not materially aided the efforts of defendants to collect the judgment, or offered to bear any of the expense of such collection, though defendants had labored to that end for some five months. In that situation Mr. Vilas was notified by the defendants that if the two interests in the judgment were to be handled together there should be a consultation and the whole matter fully understood. A letter to that effect was addressed to Mr. E. P. Vilas, one of the administrators of the Vilas estate and a trustee under the Cain assignment, which letter was delivered to Mr. William F. Vilas. This language was used in such letter: "In case it should be arranged for you to proceed with us, we would gladly meet you and lay everything before you at an early day." That was written April 16, 1895. Soon thereafter, pursuant to defendants' suggestions that a consultation should be had, the significant interview between *Mr. Bundy*, on behalf of defendants, and Mr. William F. Vilas and Mr. E. P. Vilas, on behalf of the

plaintiffs, took place, as a result of which Mr. William F. Vilas, on behalf of the plaintiffs, said he would leave the whole matter to *Mr. Bundy* and rely solely on him to conduct future litigation for the collection of the judgment, the exact language — according to the evidence of *Mr. Bundy*, which does not differ materially from the evidence of Mr. Vilas — being: "We own a one-half interest in that judgment. I believe you will take care of this case properly and I will rely entirely on you. I will not be able to give it the attention I would otherwise give it, on account of my political duties. I will rely entirely on yourself." In view of the whole situation it appears quite clear that if Mr. Vilas's language is so free from ambiguity, either in itself or as applied to the undisputed facts, as to leave no question of fact for a jury to determine, it is because it speaks plainly the language of an engagement of *Mr. Bundy* to act as attorney for the Vilas interest in future efforts to collect the judgment. The view of the learned counsel for appellants is that he spoke merely words of commendation, and that the language used should be taken in that sense. The difficulty is that the literal sense of the words used goes much farther than mere commendation, or, to put it more accurately, they are not words of commendation at all, except in so far as they indicate that the work of *Mr. Bundy* and his associate, *Fleming,* so met the approval of Mr. Vilas that he was willing to place the interest he represented unreservedly in *Mr. Bundy's* hands. To say that the language used conveyed the idea that such interest was to be protected equally with Cain's, and have the full benefit of defendants' labor, in consideration of the mere good will and confidence of Mr. Vilas, does not appeal with much force to the common sense of men of average experience in life. It can hardly be doubted that the fair, literal, reasonable meaning of the language under consideration is that Mr. Vilas authorized *Mr. Bundy* to act as attorney for the plaintiffs,

or those controlling their interest in the judgment, in future efforts to collect it; that *Mr. Bundy* accepted the employment tendered to him; and that pecuniary compensation would be made for the services rendered pursuant thereto, at least in case of success in making the collection. If that is not the correct view, then, certainly, applying the language used to the facts, the inferences of fact are not all one way, and the proper inference to be drawn was for the jury to determine.

Much significance is given, in the brief of counsel for appellants, to the testimony of *Mr. Bundy* that he did not expect compensation for his services under the contract with Mr. Vilas except in the event of success in collecting the judgment, it being argued that the only contract claimed is one by mere implication, and that such a claim is too unreasonable to admit of its being based on such a meeting of minds of the alleged contracting parties as to satisfy the essentials of a contract, because the compensation was, according to *Mr. Bundy*, left contingent. To find the existence of a contract to perform legal services for a contingent fee by implication is called the height of absurdity. The infirmity in the argument of counsel at this point is that the contract upon which the recovery appealed from was had was not an implied contract, but was an express contract. If the language used by Mr. Vilas to *Mr. Bundy*, and the latter's assumption of the responsibility of caring for plaintiffs' interest, made a contract at all, there was nothing left by it to implication, but that the services to be rendered by *Mr. Bundy* should be a subject for compensation absolutely or contingently. The fact that *Mr. Bundy* assumed that his compensation would be contingent does not appear to be so passing strange as claimed, since the judgment was considered of doubtful value and attorney's fees from the start had been contingent upon success. When Mr. Levi M. Vilas put the claim into judgment his fees were contingent

upon a final collection of such claim. When Cain assigned
one half of the judgment to the two Vilases and Mr. Lusk,
the compensation to them or plaintiffs continued in a sense
contingent, it being understood that whatever efforts were
made by the assignees to collect the claim would be with-
out expense to Cain. That being the situation, it was not
unreasonable, as it seems, but very reasonable, that *Mr.
Bundy* may have supposed that he was to take his chances
of compensation the same as all other parties to the trans-
action.

A further point is made that Mr. Vilas, being attorney for
plaintiffs and guardian for such as were minors, did not pos-
sess authority, as such, to bind them, therefore the contract,
if one was made, was not plaintiffs' contract. The one suf-
ficient answer to that is that Cain's assignees were the two
Vilases and Mr. J. W. Lusk as trustees for plaintiffs. The
legal title to a one-half interest in the judgment was trans-
ferred to the assignees for the benefit of plaintiffs, with a
power in trust of absolute control over the entire judgment.
The title of the assigned interest in the judgment did not
pass to the two Vilases and Mr. Lusk in their capacity as
administrators and representatives of the plaintiffs, and then
to the plaintiffs in the general assignment of the Vilas estate
at the close of the administration period. The words of the
assignment, it will be noted, are, " to William F. Vilas," etc.,
" administrators," not to them as, or in their capacity as,
administrators. According to well-settled rules governing
the construction of such instruments, there being no clear
indication that the parties described as administrators took
in their representative capacity, the word " administrators "
is to be regarded merely as descriptive of the persons. *Rob-
bins v. Gillett*, 2 Pin. 439; Randolph, Comm. Paper, § 440.
In the assignment under consideration there is nothing to
indicate that the assignees took title to an interest in the
judgment other than as trustees to retain it till a collection

thereof could be made. The interest conveyed was coupled with a power in trust, evidently not intended to be thereafter separated from such interest,— a power that could only be executed, efficiently, by persons learned in the law. The plain meaning of the instrument was that the three assignees should hold the title to one half of the judgment in trust for the benefit of the plaintiffs, coupled with a power to control the entire judgment for the benefit of all parties interested. When the assignment of the Vilas estate was made to plaintiffs, the title to the Cain judgment did not change. It remained in the assignees under the Cain assignment, with full power to do all things by them deemed proper or necessary to collect the judgment. As such trustees they had ample power to employ attorneys. That cannot be doubted. All trustees possess implied power to use the usual and ordinary means for the conduct of the business intrusted to their charge.

From what has been said it will be seen that ample authority existed for Mr. William F. Vilas, with the consent of his co-trustees (and it should be said in passing that it appears that such co-trustees acquiesced in whatever he did), to employ attorneys to collect or aid in collecting the judgment; and that the ruling of the court, sending to the jury the question of whether a contract was made between Mr. Vilas, on behalf of plaintiffs, and defendants, or one of them, if erroneous at all, was not prejudicial to appellants. So the motion for a general direction of a verdict in appellants' favor was properly denied.

But it is said that plaintiffs were entitled to a verdict for the money paid to R. E. Bundy, $450, in any event, because, if *Mr. C. T. Bundy* was engaged as attorney, such engagement did not carry by implication authority to employ other attorneys at the expense of plaintiffs. That is true. The court so instructed the jury. But it is just as true that an attorney may, at his own expense and risk, employ an as-

sistant to aid him in his professional employment (Weeks, Att'ys, § 246), and the court so instructed the jury.

Complaint is made because the court did not confine defendants' right to compensation to the specific amount left to them after paying the assistant, Robert E. Bundy. At the same time, if the relation of attorney and client existed between defendants or either of them and plaintiffs, the right to compensation for all services rendered by reason of such employment, whether performed by the principals or principal, or their subordinate if there was one, is conceded. The mere form of making up an account is not binding between parties, and, if it were, no account was rendered by defendants or either of them charging a specific sum for their fees or the fees of either of them, and a further fee for services rendered plaintiffs by R. E. Bundy. We find no evidence to that effect. On the contrary it appears that the accounts rendered were to the effect that the charge for attorneys' fees to the Vilas interest under the engagement of *Mr. Bundy* for plaintiffs, was $1,000. The account indicating payment of $450 to R. E. Bundy out of plaintiffs' money was constructed by counsel from information obtained by him in an interview with *Mr. Fleming.* *Mr. Bundy,* who rendered all the accounts to such counsel, claimed from first to last that $1,000 was charged plaintiffs for services rendered under the engagement made by Mr. Vilas of him as their attorney. No claim was made against plaintiffs, or any one representing them, by R. E. Bundy directly or indirectly, and no charge was made against the collected fund on account of any such claim; but there was a claim made by R. E. Bundy against defendants for services performed by him for them, which was paid, not out of plaintiffs' money, but out of defendants' money, if they or either of them were entitled to compensation for professional services rendered in behalf of the Vilas interest in the judgment to an amount equal to their claim of $1,000; and the case was

so submitted to the jury by the trial court. The argument on this branch of the case appears to proceed on the assumption that defendants employed R. E. Bundy for plaintiffs and paid him as plaintiffs' employee or the employee of their trustees. There is no evidence that we can find in the record to sustain that view. The mere fact that R. E. Bundy was paid out of the money collected on the judgment does not sustain it or tend that way, since it is clear that the charge of $1,000 to the Vilas interest was solely for professional services rendered under the engagement made by Mr. Vilas in their behalf, which he who was engaged to perform such services performed personally, or by his subordinate or subordinates. What such subordinate or subordinates did in a legal sense he did, and the case was so submitted to the jury by the trial court.

A further claim is made that money was paid to *Fleming* for legal services out of the funds belonging to the plaintiffs, and that such money should be returned because the evidence shows that if any engagement was made by Mr. Vilas, of an attorney for plaintiffs or in behalf of their interest in the judgment, it was of *C. T. Bundy* only, and that the court erroneously instructed the jury that money paid to *Fleming* could be absorbed by charges for services rendered by *Mr. Bundy* pursuant to his employment. The instructions on this point are as follows: "If the value of the services which were rendered by the defendant *Bundy* after the relation of attorney and client commenced between him and the plaintiffs, upon the theory that you shall find it did so exist, were of a sum equal to that charged independent of the sum paid to *Mr. Fleming* or other attorneys, or of the services rendered by the defendant *Fleming*, then it is immaterial, so far as this action is concerned, whether *Mr. Fleming* was engaged or not or the value of the services rendered by him, so long as no part of such payment came out of the portion of the money properly coming to the

plaintiffs, but was paid out of the amount actually earned by the defendant *Bundy* and to which he was entitled. The sum of $2,000 was charged by the defendants for their services, excluding the sum paid to the St. Paul attorneys, which is not in issue here, Therefore, the question is whether such sum was the reasonable value of the services rendered by *Mr. Bundy* after the time of his alleged employment by the plaintiffs." There are other instructions to the same effect, all of which were duly excepted to. We take it that the court intended to be, and must have been, understood by the jury as expressing this idea: If a contract was made between *Mr. Bundy* and Mr. Vilas, whereby the former alone was employed as attorney for the Vilas interest in the judgment, and the services which he rendered under that contract were reasonably worth $1,000, the full amount charged for attorney's fees against the Vilas interest, exclusive of the charges made by the Minnesota attorneys, it was immaterial to plaintiffs that he put his earnings into a common fund earned in collecting the judgment for division between himself and *Fleming*, for in that case no part of the sum so charged to the Vilas interest could properly be said to have been charged by *Fleming*, and none of plaintiffs' money could be said to have been paid to *Fleming*.

Much harsh criticism of the circuit judge's instructions on this branch of the case was indulged in by appellants' counsel, but after carefully going over the matter we fail to see that it is justified by the record so far as the legal question involved is concerned. If *Mr. Bundy* made a contract with Mr. Vilas, binding upon the plaintiffs or their interest in the Cain judgment, he was entitled to charge against the collected fund the reasonable value of the services rendered pursuant thereto. There can be no doubt about that. The jury were so instructed. If, as between *Bundy* and *Fleming*, the entire amount earned in collecting the judgment was treated as a fund in which they were equally inter-

ested, that does not militate against the right of *Bundy* to charge the Vilas interest with full compensation for his work. That compensation, when received, was his money. The treatment of it by him as a part of a fund for division with *Fleming* did not change the title of any part of it back to plaintiffs. In short, the relations between *Fleming* and *Bundy*, if the latter only was employed for plaintiffs, were entirely immaterial to the latter. They were liable for the reasonable value of the services rendered by *Bundy*, and he had a right to do with his own what he chose to do. If he divided with *Fleming* it was a division of what belonged to him, not to plaintiffs.

The contrary theory advanced by appellants' counsel may be illustrated by the following: If A., of the firm of A., B. & C., be employed by D. professionally, and the three labor together, B. and C. being subordinate to A. in carrying out the object of the employment, A. being the only person having a legal right to compensation therefor, and the person by whose direction and subordinate to whom B. and C. join in performing the professional task, when the contract of employment is ended D.'s liability is limited to the value of the services rendered by A. personally, though the value of the entire service undertaken by him and actually performed by him directly or indirectly be three times that amount; and if the entire value of such service be retained out of money lawfully in A.'s hands, and treated as between himself and associates as a fund for equal division, the money distributed to B. and C. is D.'s money and the three are liable in trover for the conversion thereof. We are unable to sanction that as good law. It is contrary to elementary principles and cannot and ought not "to prevail in a tribunal of justice." We think the jury were plainly told in effect by the trial judge, in the instructions under consideration, that if *Bundy's* labor was reasonably worth the amount retained for professional services, out of the money col-

lected on the Vilas interest in the judgment, and he was the only one employed as attorney for the owners or holders of such interest, and the amount retained was for services rendered pursuant to such employment, it is immaterial to the plaintiffs that the money when obtained was treated as part of a common fund belonging to *Bundy* and *Fleming* and, after paying their subordinate, Robert E. Bundy, it was divided equally between the defendants; and that the instruction was a correct exposition of the law applicable to the facts of this case.

The last point made is that plaintiffs were entitled at least to recover the amount charged to their interest for Cain's board, $161.25, and that the instruction requested to that effect was erroneously refused. If *Mr. Bundy* was employed as attorney for the Vilas interest, and the jury found such was the case, it included power to do those things reasonably necessary, or reasonably supposed by him to be necessary, from a professional standpoint, to carry out the object of such employment. That an attorney may, as incident to professional employment by a client, incur reasonable expenses in conducting the matter under his charge, cannot be doubted. So the only question on this branch of the case, in view of the finding against plaintiffs on the main issue, was whether, under all the circumstances, there was evidence tending to show that defendants were warranted in believing, when the expense of Cain's board was incurred, that it was necessary to a prudent administration of their professional employment to collect the judgment. The idea advanced by appellants' counsel, that the disbursement was improper as to appellants because their attorney, Mr. Vilas, neither authorized nor had notice of Cain's board being an expense in the litigation, is not material to the issue of whether the disbursement was proper as an incident to professional employment. An attorney is never bound to acquaint his client in advance with the necessity of mak-

ing each specific disbursement, and to obtain his sanction of it, in order to be entitled to charge him therefor or to retain it out of the proceeds of the litigation as an expense incident to such attorney's professional employment. By omitting to obtain such authority or sanction the attorney merely takes the chances of the expense being fairly reasonable from his standpoint when it was incurred. Now the evidence is all one way, and from the mouths of both of the defendants, that when they incurred the expense under consideration they believed that prudent conduct in the line of their employment required it; that it was supposed that Cain's presence might be needed at any time; that issues were made up by the pleadings which made it absolutely necessary to have Cain's testimony as a witness in case of the trial that it was expected would occur; that Cain was a very poor man and unable to take care of himself, and that there was no way of being certain of having him at hand when needed except by employing some person to board him; that *Fleming*, in that view, with the concurrence of *Mr. Bundy*, personally incurred liability for the board to a boarding-house keeper; that the sum, $322.50, was paid to him in order that he might discharge such liability, and that the money was actually so used.

The evidence is uncontroverted as to the facts stated. Just how to treat the matter in that situation seems to have troubled the trial judge. The charge was properly deemed of an extraordinary character and not allowable in the absence of peculiar circumstances showing clearly that it was justified thereby. Evidently the judge thought at first that the question, on the evidence, should be disposed of as a matter of law one way or the other. So far as the right to incur the expense as an incident to professional employment was concerned, he said to the jury that the expense should not be allowed unless, when it was incurred, it was clearly necessary. He further indicated that the evidence did not sat-

isfy that requisite by saying that, "upon the evidence in the case, the charge should not be allowed unless plaintiffs were cognizant of the fact that the keeping of Cain was being done as a necessary step in the proceedings to collect the judgment and made no objection thereto." As before indicated, at this point the learned judge evidently supposed that there was no evidence warranting a finding that defendants were justified in regarding the expense of Cain's board clearly necessary to a collection of the judgment when incurred, so he made the right to credit for it turn on whether plaintiffs, or he who should have spoken for them, with opportunity to object to incurring the expense, kept silent and thereby in law consented. There was some evidence to carry the question to the jury on that proposition. *Mr. Bundy* testified that he informed Mr. Vilas that Cain was being kept in aid of collecting the judgment, and no objection was made thereto. Later in the trial, upon the jury coming into court for some explanations, they were directed to find for plaintiffs as to the item of expense for Cain's board. The learned judge seems to have acted at this point upon the theory that there was no evidence to warrant a finding that such expense was allowable as an incident of professional employment, and no evidence to warrant a belief that plaintiffs, or any one authorized to speak for them, knew of the keeping of Cain as an expense of the litigation in time to object thereto. Later the judge seems to have changed to the view that the evidence was all one way in defendants' favor, making a clear case against plaintiffs if they were defeated on the main issue; that if *Mr. Bundy* was employed as attorney for plaintiffs and authorized to act as such, generally, in the collection of the judgment, such employment implied authority to incur the expense of Cain's board, the evidence being uncontroverted that it was probable, when such expense was incurred, that Cain's presence would be necessary to the efforts to collect the judg-

Vilas and others vs. Bundy and another.

ment being successful, and that such necessity could not be met in any other way than it was met. So he finally instructed the jury, and the instruction was not excepted to, to find generally for plaintiffs or defendants. That took from the jury the issue of whether the expense was a proper charge as an independent matter.

It seems clear that there was evidence admitting of a reasonable conclusion of fact that such expense was proper as a disbursement in the litigation, so the instruction to find for plaintiffs as a matter of law was properly refused. It seems equally clear that the issue of fact of whether such expense was chargeable in part to the Vilas interest, assuming that defendants or *Mr. Bundy* was authorized to represent, professionally, such interest in the litigation, was taken from the jury without objection. We having reached a conclusion that the circuit judge did not err in refusing to take the controversy as to such expense from the jury in appellants' favor, and that there was evidence admitting of a conclusion that such expense was properly incurred by the attorneys as an incident of their professional employment, the whole matter is closed in respondents' favor for the purposes of this appeal, because, as indicated, whether the subject was properly taken from the jury is not before us.

There are some other questions discussed in the brief of appellants' counsel, all of which have received consideration without disclosing any sufficient reason for disturbing the judgment. Such other questions are not deemed of sufficient significance, in view of the conclusions reached on the matters particularly referred to in this opinion, to warrant discussing them in detail.

*By the Court.*— The judgment of the circuit court is affirmed.

CASSODAY, C. J., and DODGE, J., dissent.

Medberry vs. Chicago, Milwaukee & St. Paul R. Co.

A motion for a rehearing was submitted for the appellants on a brief by *Edward P. Vilas*, of counsel, and *Wm. F. Vilas*, attorney, and for the respondents on a brief by *T. F. Frawley*. The motion was denied March 20, 1900.