OLSEN *v.* FRY.

1. VENDOR AND PURCHASER—LAND CONTRACTS—SPECIFIC PERFORM-
ANCE—"BEFORE" AND "IN FRONT OF" DEFINED.
   In a suit for the specific performance of a contract for the
   sale of a corner lot which provided for the paving of all
   streets "before" and the laying of sidewalks "in front of"
   said lot by the vendor, the purchaser is entitled to such
   improvements on both streets upon which the lot abutted.[1]

2. SAME—CONTRACT CONSTRUED MOST STRONGLY AGAINST MAKER.
   A contract for the sale of a residence lot which was pre-
   pared by the vendor will be construed most strongly
   against him.[2]

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted January 12, 1926. (Docket No. 103.) De-
cided March 20, 1926.

Bill by Victor A. Olsen against Vernon C. Fry for
specific performance of a land contract. From a de-
cree for plaintiff, defendant appeals. Affirmed.

*Kerr, Lacey & Scroggie,* for plaintiff.

*William E. Tarsney,* for defendant.

FELLOWS, J. Defendant, furnishing part of the
land and other parties furnishing another part, platted
and put on the market Sherwood Forest subdivision
just outside the city limits of Detroit. The following
year and before plaintiff purchased a lot the property
was annexed to the city. On March 1, 1917, plaintiff
entered into a contract with defendant to purchase lot
330, which was in the portion of the subdivision owned
by him. The contract contains in detail many re-
strictions making the subdivision a strictly high grade

[1]Vendor and Purchaser, 39 Cyc. p. 1297; [2]Contracts, 13 C. J. §
516.

residential district.    The contract contained the following provision:

"*Nine.* In consideration of the purchase by said second party of Lot 330 of Sherwood Forest subdivision, said parties of the first part agree that they will, without cost to the second party, provide street paving twenty feet wide before all lots except lots fronting on Livernois avenue and Lincoln highway; five-foot sidewalk and shade trees in front of all lots, put in sewers, drainage pipes, electric lights and water mains in the streets on which said lots are located, all of which improvements except as the city authorities may install, shall be completed by the end of the year 1919."

The purchase price of the lot was $3,500 and plaintiff made his payments regularly until the spring of 1921. The improvements had not been put in, due to war conditions as defendant claims, and by mutual agreement further payments were deferred.    Afterwards the city put in the public improvements which included sewers, sidewalks, pavement 26 feet wide and the attendant curbing.    The controversy here arises over this situation:    Lot 330 is located on the northwest corner of the intersection of Berkley road and Cambridge road and the pavement and sidewalks were put in on two sides of it.    Plaintiff concedes he should pay for the extra width of pavement beyond that called for in the contract, but insists that defendant should pay for the balance of the pavement with the incidental curbing and the sidewalk on both sides of the lot, while defendant insists that the lot fronts on Berkley road and that he should only be required to pay for the improvements on that street.    Plaintiff tendered the amount due under his claim, and upon its refusal filed this bill for specific performance, and had decree.

Defendant contended in the court below and here contends that the words "before" and "in front of" should be literally enforced and that they exclude improvements on streets at the side of the lot and upon

which the lot faces. The expressions "before" and "in front of" seem to have been used interchangeably. Authorities on the subject are not numerous, but we think they support plaintiff's contention that the language used under the circumstances of this case contemplates improvements upon the street or streets upon which the lot faces. In *Justices of Bedfordshire* v. *Bedford,* 7 Exch. 658, where the court had before it the words "in front of" in the local act of 43 Geo. III, chap. 128, § 59, it was said by Pollock C. B.:

"After looking at the language of the local act, and after hearing the able arguments which have been urged on behalf of the appellants, I am still of opinion that the term 'in front,' in the 59th section, includes every part of the building which the justices could form into a front by opening doors or windows in it, so as to obtain communication with any street—in other words, that every part of the building is to be considered as frontage which fronts or abuts upon any public street."

In *City of Des Moines* v. *Dorr,* 31 Iowa, 89, the court gave some force to the fact that the plural was used in the contract to "keep up the sidewalks in front of the same" yet it expressly held:

"The front of a lot is very well known to be that part of the same which faces a street or streets. It may front on one street only or it may front on two. What is the front of a lot is a question determinable by its facing upon a public street or streets. In this case the lot in question faced upon two public streets. The lease required the lessee to keep up the sidewalks in front of the lot. The building of a sidewalk on Walnut street by him was not a full compliance of the agreement, if a walk was ordered by the city on the other front."

In *Waters* v. *Collins* (N. J. Eq.), 70 Atl. 984, where the term "front property line" was involved, it was said:

"Now a lot fronts on a street when it lies face to face with, or opposite to, a street.          The front property line of any street is a boundary which delimits private property lying along that street from the street itself. Both at Atlantic avenue and Montpelier avenue this condition of affairs exists.          There is therefore on both streets a front property line of defendant's lot."

In *Meier* v. *City of St. Louis*, 180 Mo. 391 (79 S. W. 955), where the court was construing the provisions of the city charter, it was held that "fronting," "adjoining," and "abutting," as used in the charter were not synonymous, and in *Bedard* v. *Bonville*, 57 Wis. 270 (15 N. W. 185), the words in a contract "to finish the front part of the basement" were held to be so vague as to require extrinsic evidence to aid in the construction of the contract.

We shall, however, not consider the parol testimony clearly establishing the practical construction by all the parties before the price of material advanced, as we are satisfied that a consideration of the contract itself, with the surrounding circumstances, coupled with the authorities already cited, sustain plaintiff's contention.          The contract before us makes practically every conceivable restriction and condition necessary to make the subdivision a high grade exclusively residential district.          It is rare indeed that we have before us a provision evidencing such care in its preparation as in the one here.          When the subdivision was put on the market and the form of contract prepared the subdivision was outside the city and the question of paving and sidewalks was a matter of private concern and of private contract.          To make a high grade residential district there must be pavements and sidewalks and sewers and lights, not on portions of the subdivisions, but upon all of it.          Cambridge road, one of the streets here involved, has many lots facing it alone.          It is conceded by defendant that he must build pavements and sidewalks there.          It seems entirely

out of line with the character of the subdivision to think of holding that it was contemplated that he would discharge his obligation by building pavement and sidewalks there alone, leaving his purchasers to struggle through the mud where the lots only face Cambridge road on the side. Yet that would be the situation if we adopt defendant's contention, having in mind, as we have pointed out, that when platted and when the form of the contract was prepared, the lands were outside the city and the building of sidewalks and pavement a private matter. The contract was prepared by defendant and must be most strongly construed against him. We can discover no good reason for disagreeing with the conclusions of the trial judge.

The decree will be affirmed, with costs of this court.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred.