## John Dietz *v.* Metropolitan Life Ins. Co., Appellant.

*Insurance—Life insurance—Health of insured—Misrepresentations.*

A policy of life insurance stipulated that " no obligation is assumed by the company prior to the date hereof, nor unless upon said date the assured is alive and in sound health." The assured died of typhoid pneumonia. The physician who attended him in his last illness filled out a blank furnished by defendant, in which, in reply to the question : " Was deceased afflicted with any infirmity, deformity or chronic disease ? If so, specify," he wrote " Epilepsy." The father and sister of the assured testified that the assured had fits during childhood, but that he had not been so afflicted for twelve years prior to the date of the policy, and that he was in sound health when the policy was issued. *Held*, that the question as to whether the assured was in sound health at the date of the policy was for the jury.

In such a case it is not error for the court to charge " A man may have sick headache temporarily, and still be considered in sound health, although abstractly considered it is not sound health; so a man may have an attack of rheumatism; now abstractly he would not be considered to · be in sound health, and yet I apprehend that in the meaning of this policy he would be in sound health if it was just a temporary attack of rheumatism. . . . These little infirmities, or rather these little attacks of temporary disease,—headache, or a little attack of rheumatism, or some little attack of that kind,—I do not apprehend are what is meant in this policy to be ' sound health,' because they have no probable bearing upon the man's life."

Argued Oct. 31, 1894.    Appeal, No. 209, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1893, No. 625, on verdict for plaintiff.    Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Assumpsit on a policy of life insurance.    Before WHITE, J.

At the trial it appeared that the policy contained the following stipulation: " No obligation is assumed by the company prior to the date hereof, nor unless upon said date the assured is alive and in sound health."    The insurance company claimed that the assured was ill with chronic epilepsy at the time the policy was issued.    The assured died of typhoid pneumonia two years after the date of the ·policy.    The physician who attended him at the time of his death filled out a blank furnished by the defendant.    In the blank was the following question: " Was deceased afflicted with any infirmity, deformity or chronic disease?    If so, specify."    In answer to this the physician wrote " Epilepsy."    The father and sister of the deceased testified that he had been subject to fits during childhood, but that he had not been so afflicted for twelve years prior to the date of the policy.

The court charged in part as follows:

" Now the question of sound health is the defense here.    What is meant by ' sound health ' in the sense of this policy?    There are a great many things to be considered in the question of sound health.    It relates to the time the policy was issued; it expressly says that the company will not assume any obligation unless the party is living at the time the policy is issued and in sound health.    Now a man may be in sound health according to the common meaning and acceptation of those words, if

he is sound in health so as not to be in danger or not to be seriously sick,—not to be afflicted in any way that would endanger his life or create any reasonable probability that his life was in danger. I do not say that he must be seriously sick, so as to imply that he was not likely to recover; I do not mean that; [but what I mean is this; a man may have sick headache, temporarily, and still be considered in sound health, although, abstractly considered it is not sound health. So a man might have an attack of rheumatism, a temporary attack of rheumatism ; now abstractly he would not be considered to be in sound health, and yet I apprehend that in the meaning of this policy, he would be in sound health, if it was just a temporary attack of rheumatism. So I apprehend if a man had his arm broken at the time of the issuing of this policy, just an ordinary fracture of the arm, not of serious character, that he, in the sense of this policy, would be considered a man in sound health. I take it that the words 'sound health' there have some reference to the risk that the company is assuming at the time the policy is issued. These little infirmities, or, rather, these little attacks of temporary disease—headache or a little attack of rheumatism or some little attack of that kind—I do not apprehend are what is meant in this policy by 'sound health' because they have no probable bearing upon the man's life,] [2] and probably have no bearing upon the risk the company is assuming at the time. I infer from this policy that it means something that the company would require to be communicated to it at the time the policy is taken out,—something that might affect the risk it was taking.

" In this case the assured died of typhoid pneumonia. The allegation here is that he was subject to epileptic fits, and that he was not, therefore, in sound health when the policy was issued. .

" The counsel for the defendant has presented two points to me. One is that under all the evidence the verdict ought to be for the defendant. I refuse that point. [1] The other is that if the insured was afflicted with the chronic epilepsy at the time the policy was issued the verdict ought to be for the defendant. I affirm that point, and that is the question now before you. Was the insured, at the time the policy was issued, afflicted with chronic epilepsy ?

" Chronic means long standing; that is the general meaning of the word chronic,—a probability of it continuing—because a long standing disease is likely to continue, and generally these chronic diseases grow worse with years. They are almost always regarded as incurable, or, at least, not likely to be cured.

" From the evidence, gentlemen, it would seem that the insured, when he was a boy, was subject to epileptic fits. I think the evidence would fairly justify the jury in finding that fact. Now, according to the testimony of the physician called, boys may outgrow these epileptic fits, and if he was not subject to them at the time this policy was taken out, why I think he might be regarded as of sound health. There is some conflict in the testimony on that point. The testimony of some of the witnesses would indicate that these epileptic fits continued on until the time of his death. The father and the sister testify, or the father more especially, that for some twelve years he had not been afflicted with these epileptic fits except occasionally at night he had some of them. The father did not call them epileptic fits; he spoke about them as ' weaknesses; ' and the sister testified that for several years before his death he had nothing of the kind during the daytime.

" Now it is for you, gentlemen, to say upon all the evidence whether this insured party was afflicted with chronic epilepsy at the time this policy of insurance was issued. If he had been for some years free from them, I apprehend that he would be regarded at the time of the policy issuing as of sound health, although he had these fits years before. But if they continued on down to the time of his death and he was then still subject to them, and there was a probability of his being subject to them in the future, I think he could not be regarded as of sound health.

" As I said, the certificate of the physician here seems to me to relate more especially to the occurrences at the time of the sickness and death. In answering that eleventh question that I have referred to: [ ' Was the deceased afflicted with any infirmity, deformity or chronic disease? If so, please specify.' He simply gives the word ' Epilepsy.' Now that question appears to refer back to the whole life; it does not limit to the time of the death, but it seems to go back and cover the whole life, and if the party had been subject to epileptic fits

in childhood and had recovered from them, I apprehend the doctor ought to answer as the answer is here. I do not know what they mean by ' deformity or chronic disease,' but still the question, I apprehend, is as to the condition of the party at the time of the death.] " [3]

Verdict and judgment for plaintiff for $258. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*W. K. Jennings*, for appellant.—To leave to the jury a finding of fact without the color of proof is certainly error : Whitehill v. Wilson, 3 P. & W. 405 ; Eister v. Paul, 54 Pa. 196 ; McCracken v. Roberts, 19 Pa. 390 ; Koons v. Steele, 19 Pa. 203.

*L. K. Porter, S. G. Porter* with him, for appellee.

OPINION BY MR. JUSTICE McCOLLUM, May 30, 1895 :

There was no evidence of fraud or misrepresentation in obtaining the insurance, and the sole question for the jury was whether the insured was in sound health when the policy was issued. It appears to have been conceded that the immediate cause of his death was typhoid pneumonia, but the defendant company claimed that he was affected with chronic epilepsy, and introduced some evidence to support its claim. Upon this evidence it requested the court to say that its claim was substantiated and to direct the jury to find in its favor. The court declined to comply with the request and referred the question to the jury with the instruction that if they believed from the evidence that the insured was afflicted with chronic epilepsy at the time of the issuing of the policy, then he was not in sound health and the verdict should be for the defendant. The refusal of the request is the subject of the first specification of error. The condition of the health of the insured when the policy was issued was essentially and entirely a question of fact to be decided upon the evidence and involving the credibility of witnesses. The most of the evidence affecting this question related to the period of his childhood, and was to the effect that he occasionly had fits, " or weak spells." His father, who was called by and on behalf of the defendant, testified that he had not seen

his son have "a weak spell" for twelve years preceding the issuing of the policy, although during all that time the latter dwelt and worked with the former. He testified further that his son was strong and active, and the most of the time referred to was employed as a hodman. The sister of the insured who was also called by the defendant company testified substantially as her father did in regard to her brother's health and ability to labor. Their testimony was uncontradicted and tended to show that he was in sound health when the policy was issued. The certificate of the physician who attended him in his last sickness afforded but little if any support to the claim that he was afflicted with chronic epilepsy. It was, on this point, plainly reconcilable with the testimony of the father and sister, and with the other evidence in the case. Our conclusion resulting from an examination of all the testimony is that the question whether the insured was in sound health when the policy was issued was for the jury, and that it would have been manifest error to refuse to submit it to them.

The second and third specifications are based on excerpts from the charge which the defendant characterizes as misleading. We have given to this complaint all the consideration it deserves and are convinced that it is without just foundation. The charge appears to be adapted to the issue and the evidence affecting it, and there is no prejudice, partiality or tendency to mislead, discernible in it. It was the duty of the learned trial judge to construe the contract and to define the scope and meaning of the provision in it on which the defendant sought to avoid the insurance. It is not claimed that there was any error in his construction of the contract, but the learned counsel for the defendant appears to think that his explanation of the meaning of the words "sound health" as used in the policy was more elaborate and illustrative than was necessary and tended to belittle the defense. We do not think so; nor do we see any merit in the criticism of the portion of the charge which is complained of in the third specification. The jury were plainly and repeatedly informed that the material question for their determination was whether the insured was in sound health when the policy was issued. There was no room in the instruction on this point for misapprehension of the issue. The specifications are overruled.

Judgment affirmed.