McGowan, Respondent, vs. The Supreme Court of The Independent Order of Foresters, of Toronto, Canada, Appellant.

*September 5 — October 12, 1900.*

*Mutual benefit insurance: Materiality of answers in application: Warranty: Breach: Intentional concealment.*

In an application for insurance in a mutual benefit company the insured affirmed and declared that the several answers contained therein were each and all true, and that he had made no intentional omission, concealment, or mental reservation of any material fact or circumstance relating to his past or present health, habits, or condition, or to his family history, and agreed that such questions and answers should form part of the contract. The certificate recited that it was issued in consideration of the agreements and statements contained in said application and in the medical examination paper, and also in consideration of the warranty that the same, being material to the risk, were in all respects true and correct. In an action on the certificate the jury found that the answers of the insured to questions in said application concerning the health, death, and age at death, of his ancestors, brothers, and sisters, were false. On a former appeal said questions had been held material to the risk as matter of law. *Held*, that the positive answers of the insured to said questions constituted warranties, and that, being false, no recovery could be had on the certificate, even though the jury also found that each of said answers was made without any "intentional omission, concealment, or mental reservation" on the part of the insured.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Mylrea & Bird*, and oral argument by *W. H. Mylrea* and *C. B. Bird*.

For the respondent there was a brief by *Fruit & Gordon*, and oral argument by *J. J. Fruit*. They contended, *inter alia*, that the statements and declarations contained in the medical examination paper did not constitute a warranty; neither did these statements and declarations, together with the contract itself, constitute a warranty. *Campbell v. New England M. L. Ins. Co.* 98 Mass. 381, 391; *Moulor v. Am. L. Ins. Co.* 111 U. S. 335; *Anders v. Supreme Lodge K. of H.* 51 N. J. Law, 175; *Vivar v. Supreme Lodge K. of P.* 52 N. J. Law, 455; *Clapp v. Mass. Ben. Asso.* 146 Mass. 519; *Illinois M. B. Asso. v. Winthrop*, 85 Ill. 537; *Supreme Lodge K. of P. v. Edwards*, 15 Ind. App. 524; *Daniels v. Hudson River F. Ins. Co.* 12 Cush. 416, 424.

CASSODAY, C. J. This is an action to recover insurance upon a certificate of membership of Edward Pion in the defendant company dated June 3, 1896. The case was here upon a former appeal. 104 Wis. 173.

It appears from the record, and is undisputed, that Edward Pion made a written application for such membership May 4, 1896, upon a blank of the defendant, in which he answered several questions, to the effect that he was then in good health, and had never had pleurisy, inflammation of lungs, acute bronchitis, chronic catarrh, diseases of throat or air passages, shortness of breath, spitting blood, chronic cough, or consumption; (66) that he had no diseases during the last five years for which he needed the attendance of a physician (104 Wis. 184); (78) that he had never had acute or inflammatory rheumatism; (113) that his father died at the age of sixty-four years; (114) that he did not remember the cause of his death; (115) that he was ill two or three weeks; (116) that his previous health was good; (120) that his mother died at the age of fifty-eight years, (121) of inflammation of the bowels, (122) and was ill two weeks; (128) that none of his brothers was dead; (134) that none of his sisters was

dead; (138) that his paternal grandfather was killed in the army; (140) that his maternal grandfather was killed in the army; (143) that none of his grandparents or uncles or aunts or near relatives had been afflicted with inflammatory or acute rheumatism, or insanity, or epilepsy, or consumption or other tubercular disease, or scrofula or cancer, or with any other constitutional or hereditary disease, or committed or attempted to commit suicide; (157) that he thereby affirmed and declared that the answers to each and all of such questions, and also those made to the medical examiner, were true and correct, and that no intentional omission, concealment, or mental reservation had been made of any material fact or circumstances relating to his past or present health, habits, or condition, or to his family history, and he thereby agreed that the questions and answers therein contained should form a part of his contract with the defendant. "[Signed] Edward Pion, Applicant. Witnessed: H. F. Gunn, M. D."

The defendant's medical examiner reported to the defendant, under the same date, to the effect that, after carefully examining the applicant, he was satisfied that the applicant was free from any tendency to cough or difficulty of breathing, or any other local or constitutional disease which would naturally affect the risk; that he believed the applicant's answers to the questions mentioned were full and true; that he considered him a first-class risk, and recommended him to membership in the company.

The certificate of insurance issued upon such application June 3, 1896, omitting marginal and head declarations and immaterial parts, is as follows, to wit: "In consideration of the application for membership, and of the agreements and statements therein contained, and of the statements, representations, and declarations contained in the medical examination paper (in so far as  .  .  .  material to the contract), and in consideration, also, of the warranty of the applicant

that the same, being material to the risk, are in all respects true and correct, and in consideration, also, of the provisions of the constitutions and laws enacted by the *Supreme Court of the Independent Order of Foresters*, and of any and of all amendments thereto adopted from time to time by the said *The Supreme Court*, and in consideration, also, of the declarations and promises contained in the obligation taken by initiates in subordinate courts (each of which, the said application for membership, the medical examination paper, the constitutions and laws, and the said obligation, are hereby referred to by the parties hereto and made a part of this contract), and upon the faith and credit of all and each of which agreements, statements, promises, representations, provisions, and declarations, and in consideration of the payment by the applicant, at the times required, of any and of all the assessments, dues, fees, capitation tax, and fines required by the said constitutions and laws to be paid on account hereof, this benefit certificate is issued." On the back of such certificate the applicant thereby expressly agreed, in writing, to the conditions of the benefit certificate therein and thereon, and that he was bound thereby; and he agreed that the constitutions and laws, as well as the amendments thereto which might be adopted from time to time by such company, should be a part of such contract.

Edward Pion died February 9, 1898, and April 25, 1898, this action was commenced to recover such insurance.

Issue being joined, and trial had, the jury at the close thereof returned a special verdict to the effect (1) that Edward Pion's paternal grandfather died at the age of fifty-five years; (2) that his maternal grandfather died at the age of fifty years; (3) that his father died at the age of sixty-one years; (4) that Edward Pion's answer as to the age at which his father died was not true and correct, (5) but such answer was not any intentional omission, concealment, or mental reservation on the part of Edward Pion; (6) that Edward

Pion's father was ill prior to his death about six weeks; (7) that his answer as to the duration of his father's illness was not true and correct, (8) but that such answer was not any intentional omission, concealment, or mental reservation on the part of Edward Pion; (11) that Edward Pion's mother died at the age of sixty-one years; (12) that his answer as to the age at which his mother died was not true and correct, (13) but that such answer was not an intentional omission, concealment, or mental reservation on the part of Edward Pion; (16) that Edward Pion's answer as to the cause of his mother's death was not true and correct, (17) but that such answer was not any intentional omission, concealment, or mental reservation on the part of Edward Pion; (18) that Edward Pion's answer as to the number of sisters dead was not true and correct, (19) but that such answer was not an intentional omission, concealment, or mental reservation on the part of Edward Pion; (20) that Edward Pion's answer as to the number of brothers dead was not true and correct, (21) but that such answer was not an intentional omission, concealment, or mental reservation on the part of Edward Pion; (22) that Edward Pion's answer that he was in good health at the present time was true and correct; (25) that Edward Pion's answer that he had never had pleurisy and the other diseases mentioned was true and correct; (27) that Edward Pion's answer that he had had no diseases during the last five years for which he needed the attendance of a physician was true and correct; (29) that the health of Edward Pion's father was good previous to the last illness causing his death; (31) that the plaintiff's damages were assessed at $2,235.66.

From the judgment entered thereon for that amount, with costs, the defendant brings this appeal.

The application and other papers mentioned, together, constituted the contract between Edward Pion and the defendant. *Herbst v. Lowe*, 65 Wis. 316, 320, and cases there

cited. Being in writing, the parties were, in the absence of fraud or mistake, conclusively presumed to know the contents of their own written contract. *Id.; Straker v. Phenix Ins. Co.* 101 Wis. 413, 421; *Jackowsksi v. Illinois S. Co.* 103 Wis. 454; *N. Y. L. Ins. Co. v. Fletcher*, 117 U. S. 519. Such written contract is, of course, to be construed by the court, in so far as construction is permissible. In construing such contract on the former appeal it was held that the " answers of the insured, in his application for insurance, to questions concerning the health, death, or age at death, of his ancestors and brothers and sisters," were " material, as a matter of law," and that it was " error to submit the question of their materiality to the jury." 104 Wis. 173. In his application for such insurance, Edward Pion answered that his father died at the age of sixty-four, after an illness of two or three weeks. Upon the last trial the jury found that neither of such answers was correct, and that his father was ill prior to his death about six weeks. In his application he stated that his mother died at the age of fifty-eight, of inflammation of the bowels. Upon the last trial the jury found that neither of such answers was correct; that she died at the age of sixty-one years, and not of inflammation of the bowels. In his application he stated that none of his brothers was dead. Upon the last trial the jury found that such answer was untrue. In his application he stated that none of his sisters was dead. Upon the last trial the jury found that such answer was untrue; and the undisputed evidence is that it was untrue, and that he then knew that his sister Ella was dead, and that he had attended her funeral. As indicated, Edward Pion in and by his application affirmed and declared that the several answers contained in his application were each and all true and correct, and therein agreed that such questions and answers should form a part of his contract with the defendant. The certificate of insurance was based upon such application and medical

examination, containing such agreements, statements, rep-
resentations, and declarations, and recited, in effect, that the
same was issued in consideration of the *warranty* of the ap-
plicant that the same, being material to the risk, were in
all respects true and correct, and was issued upon the faith
and credit of all and each of such agreements, statements,
promises, representations, provisions, and declarations.

The question recurs whether a judgment can be main-
tained, based upon such statements, which this court has held
to be material to the risk, and which the jury have found to
be false.    The theory upon which it is sought to maintain
the judgment is that none of such statements were warran-
ties, but that each was a mere misrepresentation, and, al-
though false when made, yet, as found by the jury, each of
such statements was so made without any "intentional
omission, concealment, or mental reservation on the part of
Edward Pion."    Such theory is sought to be maintained by
reason of the fact that after Edward Pion had, in his appli-
cation, affirmed and declared that his answers to each and
all of such questions, and those made to the medical exam-
iner, were true and correct, he further said, "and that no
intentional *omission, concealment, or mental reservation* has
been made of any material fact or circumstances relating to
my past or present health, habits, or condition, or to my
family history."    This relates merely to some "omission,
concealment, or mental reservation."    It certainly does not
mean that when the insured made a false statement he
merely unintentionally omitted to tell the truth, or that he
unintentionally concealed the truth by stating a falsehood,
or that he had some mental reservation in direct conflict
with the falsehood stated.    It may well apply to questions
not answered, as, for instance, a portion of question 65,
which reads: "If you have had . . . any other dis-
eases, give full particulars as to character, date, duration,
and whether you have fully recovered, and the name of the

physician who attended you." So it may apply to the an-
swer given to question No. 66, fully considered on the former
appeal. 104 Wis. 182, 184. So it may apply to the answer
to the 114th question,— that he did not remember.

The language quoted is not equivalent to that used in the
cases relied upon by counsel for the plaintiff. Thus, in one
of the cases cited the language of the contract was " wilful
misrepresentation," — " fraudulent concealment or design-
edly untrue statement." *Fowkes v. Manchester & L. L. A.
& L. Asso.* 3 Best & S. 917, 920. In another the language
was " no misrepresentation or suppression of *known* facts."
*Anders v. Supreme Lodge K. of H.* 51 N. J. Law, 175. The
same language was used in *Illinois M. B. Soc. v. Winthrop,*
85 Ill. 537. In another the language was that the state-
ments were true " to the best of my knowledge and belief."
*Clapp v. Massachusetts B. Asso.* 146 Mass. 519, 520. So in
the case in this court, relied upon, the language in the con-
tract was " so far as the same *are known* to the applicant
and are material to the risk." *Redman v. Hartford F. Ins.
Co.* 47 Wis. 89.

No such qualifying words are contained in the contract of
insurance in the case at bar. On the contrary, the only quali-
fication relates to something omitted, concealed, or mentally
reserved, and hence not expressed. There can be no doubt
but that such positive answers to such direct questions con-
stituted warranties. This would have been so even without
the word " warranty " having been used in the certificate.
*Neave v. Arntz,* 56 Wis. 174; *Barnes v. Burns,* 81 Wis. 235.
But here the express warranty constituted a part of the con-
sideration upon which the certificate was issued. Such war-
ranties were absolutely binding upon the insured and those
claiming under him. *Blumer v. Phœnix Ins. Co.* 45 Wis.
622; *S. C.* 48 Wis. 535; *Copp v. German Am. Ins. Co.* 51
Wis. 637; *Baumgart v. Modern Woodmen,* 85 Wis. 546; *Boyle
v. N. W. M. R. Asso.* 95 Wis. 312; *Straker v. Phenix Ins. Co.*

101 Wis. 413, 418. In one of these cases it was held that " the insurance was avoided by a false statement in such application that the insured had never had a certain disease, although he never knew.he had it, and his death resulted from other causes." In another it was held that a false affirmative answer to a question in relation to the health of the insured avoided the contract of insurance, " even though the assured believed when she made it that it was true." To the same effect, *Armour v. Transatlantic F. Ins. Co.* 90 N. Y. 450; *Hartford L. & A. Ins. Co. v. Gray*, 91 Ill. 159; *Dwight v. Germania L. Ins. Co.* 103 N. Y. 341. In one of these cases it was held, in Illinois, that " no recovery can be had upon a life policy of insurance which is obtained by fraud and misrepresentation on the part of the assured as to material facts affecting the risk; and the age of his parents at their death, and the disease of which they died, and the fact whether the brothers and sisters of the assured were all living, are material, and must be truly stated in the application." But it is unnecessary to multiply authorities on the question.

It may be very doubtful whether the evidence sustains. the twenty-second finding of the jury, as to the condition of Edward Pion's health at the time of procuring the insurance, or the twenty-ninth finding of the jury, as to his father's health previous to his last illness. But the views expressed render it unnecessary to consider either of those questions.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in favor of the defendant.