MINNIE D. MACKINNON v. THE FIDELITY AND CASUALTY COMPANY.

Argued November 3, 1904—Decided March 17, 1905.

If, by reason of an ambiguity resulting from the form in which a question has been cast by an insurer, the answer of the applicant (which becomes a warranty) may state the truth or may state a falsehood, according as the ambiguity is resolved, that construction should be adopted that is most strongly against the party who is responsible for the ambiguity, and to this end the insured may stand upon the strict form of the question put to him, by the insurer.

On demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and GARRETSON.

For the plaintiff, *Louis G. Morten.*

For the defendant, *William D. Edwards.*

The opinion of the court was delivered by

GARRISON, J. This is a demurrer to a plea. The declaration averred that the defendant had insured the husband of the plaintiff against "disability or death resulting directly from bodily injuries sustained through accidental means" by a certain contract or policy of insurance made with him, a copy of which was annexed to the declaration and expressly referred to therein and made a part thereof. The policy so annexed included a schedule of warranties, consisting of a series of questions and answers, one of which is as follows:

"K. No application ever made by me for insurance has been declined and no accident or health policy issued to me has been canceled or renewal refused, except as herein stated. No."

The plea to which a demurrer has been filed recites the precise language of this section and identifies it as section K, and then goes on to aver that such statement was false and untrue because the insured had made an application for a policy of *life* insurance, which was declined.

The primary question is whether the word "insurance" in the first clause of this warranty means *life* insurance, the plaintiff contending that it refers only to insurance of the sort for which the insured was applying, viz., accident or health insurance. The word "insurance" in this clause evidently did not mean any insurance, for in that case it would cover not only life and accident insurance, but also fire insurance and insurance against tornadoes, burglars, liability to employes, as well as credit, live stock, plate glass and other

similar insurances, which, admittedly, were not intended. The word "insurance" not being used in its universal sense, the clause requires construction to ascertain its fair meaning and intent. After an original diversity of opinion as to the proper construction of this clause, we have concluded that the insurance there spoken of is life insurance. This conclusion, which was reached by a comparative examination of the other clauses and sections of the same schedule, leaves untouched the fact that the interrogation covers two transactions, so coupled as to admit of, if not to require, a single answer to the proposition propounded as an entirety. Such answer was in point of fact made by the insured and accepted by the insurer, who now exhibits it by the plea under consideration. But a negation of this proposition as an entirety is strictly a denial of it in its entirety, and does not necessarily affirm or deny either of its component clauses as independent propositions. It is only by disregarding the strict form in which the question was put and by substituting the disjunctive particle for the copula, and then, further, by ascribing to the single negative the function of answering two questions touching widely different transactions, that a false warranty is to be imputed to the insured by reason of section K. If after the disruption of the dual question it be conceded that but one of its components has been answered, it is only upon the gratuitous assumption that such answer was not made in response to the matter with respect to which it was true, and by arbitrarily assigning it to the question with respect to which it was false that the breach of warranty set up by the defendant's plea will be averred.

The question therefore arises whether courts resort to such intricate processes of construction for the purpose of sustaining forfeitures. The doctrine upon this subject arises from the relative positions of the parties. Here we are dealing with a question propounded by an insurer as the basis of a warranty on the part of the insured, a breach of which will avoid the insurer's contract. Such questions are formulated by the insurer under circumstances that admit of their being clear and direct. The purpose for which they

are to be used is thoroughly understood, and, presumably, they are the result both of experience and of forethought. On the other hand, they are submitted to applicants for accident insurance, who as a class are not experts in matters of this sort or in the construction of language by other than the simplest rules, to be answered under conditions that are, to say the least, none too favorable for critical examination. Under these circumstances, if by reason of an ambiguity resulting from the form in which the question has been cast the answer to it may state the truth or may state a falsehood, according as the ambiguity is resolved, our decisions constrain us to adopt the construction that is most strongly against the party who is responsible for the ambiguity, and to that end our cases permit the insured to stand upon the strict form of the question put to him by the insurer. The decisions referred to are collected in the opinion delivered by Mr. Justice Fort, for the Court of Errors and Appeals, in the case of *Hampton* v. *Hartford Insurance Co.*, 36 *Vroom* 265, 267.

The present case is an apt illustration of the salutary nature of this doctrine. Our own original differences admonish us of the difficulties involved in the construction of the language employed by the insurer in framing this warranty. The process by which its falsity is made to appear is of the most intricate nature. There is a possible construction that is consistent with the truth of the statement made by the insured. The ambiguity that exists did not inhere in the nature of the inquiry and is chargeable solely to the insurer. To ask a man whether he has ever made an application for life insurance that has been declined is not an abstruse question or a difficult one to ask. It is only by couching the question in language that admittedly is not clear, and by intermingling such inquiry with others touching an entirely different subject-matter, that ambiguity is imported into a transaction that should be rendered as simple and direct as possible. It is not contended that the ambiguity was intentional. That is not required by the rule we are applying; it is enough that it exists and that it has

resulted from matters entirely under the control of the party who will profit by its existence if by reason thereof such party is permitted to avoid the performance of its contract.

Judgment on the demurrer will be given for the plaintiff.