FRENCH, Appellant, vs. FIDELITY AND CASUALTY COMPANY
OF NEW YORK, Respondent.

*March 12—March 31, 1908.*

*Accident insurance: Pleading breach of warranty: Construction of*
*policy: Words and phrases: Ambiguity: Forfeitures: Waiver:*
*Warranties: Questions for jury: Proximate cause of death: Evi-*
*dence: Proof of death: When action may be brought.*

1. In an action on an accident policy a breach of warranty is not
   available as a defense unless expressly pleaded.
2. A policy of insurance should be construed as any other contract
   to ascertain the intention of the parties from the language
   used, and all provisions, conditions, or exceptions which in any
   way tend to work a forfeiture should be construed most
   strongly against the party preparing the contract and for
   whose benefit they were inserted.
3. Any provision or exception which is uncertain or ambiguous or
   is capable of two meanings should be construed most favorably
   to the insured.
4. Whether the answers in an insurance policy are false is a ques-
   tion for the jury, if there is any conflict in the evidence.
5. If an insurance company receives an application for insurance
   with a material question therein unanswered or not fully an-
   swered and issues a policy thereon, it thereby waives a provi-
   sion in the policy avoiding it in case the facts called for by
   such questions are not fully disclosed.
6. Where an accident policy provides that the answers of the in-
   sured to questions therein shall be considered warranties, if a
   question is not answered there is no warranty that there is
   nothing to answer, and in case of a partial answer the war-
   ranty cannot be extended beyond the answer.
7. An accident insurance policy contained a statement that the in-
   sured had never had certain disorders, except as therein stated,
   followed by a blank line in which a check mark was placed,
   apparently by the insurer's agent. There were other similar
   statements followed by blank lines containing checks. The
   policy was not signed by the insured and contained no war-
   ranty that the statements therein were fully and truly an-
   swered. *Held*, that an ambiguity existed with respect to the
   conclusion to be drawn from the warranties contained in the

policy with a check mark in the blank space, and it was for the jury to determine whether the check marks were to be treated as a denial of any exception or as a waiver of any statement and answer thereto.

8. Where there is an ambiguity in a written contract and ambiguous words or terms are to be construed by extrinsic evidence or the surrounding circumstances, the question is for the jury.

9. Where an accident policy insured against death resulting "from bodily injuries sustained through external, violent, and accidental means, independently of all other causes," and it appeared that the insured accidentally struck his leg against an iron safe, causing an abrasion of the skin where an infection started, from which fifteen days later blood poison ensued, producing death, *held*, that the wound produced by the accident was the proximate and sole cause of death.

10. In such a policy, "independently of all other causes" has no more extensive meaning than "sole and proximate" cause.

11. Where death results from disease which follows as a natural though not necessary consequence of an accidental injury, it is within the terms of an accident policy insuring against death resulting "from bodily injuries sustained through external, violent, and accidental means, independently of all other causes," the death being deemed the proximate result of the injury and not of the disease as an independent cause.

12. It is to be presumed that the parties to an accident policy intended that words used therein describing certain physical conditions should be understood in their ordinary sense when used in common speech.

13. Where in such a policy the insured stated he was not afflicted with bronchitis, *held*, that the word "bronchitis" was used in a limited sense as meaning a chronic disease which would not readily yield to treatment and which tended to impair the health and strength; that it did not include an acute attack from which the insured had fully recovered at the time the policy was accepted.

14. In an action on such a policy the evidence is *held* not to show conclusively that the insured ever suffered from bronchitis within the meaning of the warranty.

15. "Bodily infirmity," as used in an accident policy exempting the insurer from liability, only includes an ailment or disorder of an established and settled character, and not merely a temporary disorder arising from a sudden and unexpected derangement of the system.

16. "Sound condition physically" is synonymous with sound health, which does not mean perfect health, but indicates the absence in the constitution of any vice or disease of a serious nature tending to a general impairment of physical health and vigor.

17. Whether the insured is in sound condition physically depends upon the circumstances of each case and is a question for the jury on the evidence.

18. Testimony which might have been excluded if seasonably objected to, but which was received without objection, is entitled to full consideration.

19. The requirement in an accident policy of affirmative proof of death may be regarded as satisfied by notice of death to the insurance company and the holding of an autopsy at its request.

20. Where an accident policy provided that action thereon should not be brought within three months after affirmative proof of death, held, that a denial by the insurer of any liability on the policy was a waiver of the right that the stipulated time elapse before suit, and an action may be commenced at once.

APPEAL from a judgment of the circuit court for Portage county: CHAS. M. WEBB, Circuit Judge. Reversed.

This is an action brought to recover $5,000 on an accident insurance policy for the death of George G. French, the insured, by Eliza J. French, his sister, the beneficiary. The insured, who was a passenger conductor, accidentally struck the lower part of his right leg on a small iron safe in the baggage car January 13, 1905, causing an abrasion of the skin. Septic poison set in, and he died January 28, 1905, as a result of the injury.

The policy, which is attached to the complaint as a part thereof, was issued by the defendant September 30, 1904, and, upon the consideration therein stated, insured George G. French for one year "against bodily injuries sustained through external, violent, and accidental means," and stipulated that "if death shall result from such injuries within ninety days, independently of all other causes, the company will pay the principal sum of five thousand dollars." There were other provisions with respect to disabilities and to the

payment of indemnity. The policy required immediate written notice to be given to the company at New York or Chicago of any accident and injury for which a claim was to be made, and affirmative proof of death to be furnished to the company within two months thereafter; and provided that legal proceedings to recover thereunder should not be brought before the expiry of three months from date of filing proofs at the company's home office, nor brought at all unless begun within six months from the time of death. The policy was issued in consideration of the payment of the premium and of the statements of the schedule therein contained, "which statements the assured makes on the acceptance of this policy and warrants to be true." The "schedule of warranties," purporting to be made by the insured, began at the top of the third page after the signatures of the officers and the agent of the company to the policy, and was not signed by the insured or by the company. There were seventeen separate statements, numbered alphabetically from A to T. Those from A to L stated the age and personal characteristics of the insured, his occupation and wages, the amount of the premium, and the name and address of the beneficiary. The other statements, from M to P, were not answered, but after each, except O, which was left blank, there was a V-shaped check mark in the middle of a blank line. Statement P, which was one of those challenged, will indicate the form of the others. It is as follows: "P. I have never had fits or disorders of the brain or any bodily or mental infirmity, *except as herein stated*"—followed by a blank line in which a check mark was placed.

After the death of the insured on January 28th notice by telegram was given the company January 31st, and particulars by letter were forwarded the next day. A formal statement on a printed blank furnished by the company was forwarded and received at the Chicago office February 1 and at the New York office March 8, 1905. On April 19, 1905,

*Eliza J. French,* the beneficiary, filled out a further proof of death at Cornwall, Canada, presumably upon a blank furnished her by the company, which was forwarded to the home office. In the meantime, and on February 8th, an autopsy had been held at the instance of the defendant to ascertain the cause of the death of the insured. On June 5, 1905, the defendant notified the beneficiary that it had decided to reject the claim. Thereafter and on July 18, 1905, this action was commenced.

The complaint is in the usual form, and the policy, containing the schedule of warranties, is attached as a part thereof. The answer admits the issue of the policy, the death of the insured, and the demand and refusal of payment. It denies that the insured sustained any bodily injury through external, violent, and accidental means, and denies other averments of the complaint not specifically admitted. It alleges that affirmative proof of death was not forwarded within two months thereafter, as required by the policy, and that the action was brought before the expiration of three months from the date of filing proofs at the company's home office. It then refers to the warranties contained in the schedule, and alleges the falsity of statements P and Q, and avers that the insured at the time of the acceptance of the policy was and for a long time theretofore had been suffering from chronic asthma and bronchitis. Statement P has already been referred to. Statement Q was treated as a warranty that the defendant was in sound condition physically when the policy was issued. Upon the trial Dr. Lathrop, who was called as a witness by the plaintiff, testified on cross-examination, without objection, that he attended the insured the winter before the policy was issued as his physician when he was laid up with bronchitis; that he had the old-man chronic bronchitis; that he promptly recovered from the acute condition; and that he did not have any bronchitis during the summer. "I did not

doubt but what he had a little old chronic bronchitis, as all old men have, but nothing that called for any attention." Mrs. Sinclair, at whose house the insured had lodged twenty months before his death, testified that his general health was good; that he had a hard cold the winter before, from which he had recovered; that she had not known that it was bronchitis that he had. The brakeman who served on the train with the insured the year before his death testified that he was a strong, robust man, and that his health was excellent up to the time of his injury. Upon the close of plaintiff's testimony, at defendant's request, the court granted a non-suit, upon the ground that the policy was avoided by the falsity of the statements with respect to the physical soundness and condition of the insured "as to the deceased having had bronchitis at some time in his life." Thereupon judgment was entered in favor of the defendant, from which this appeal is taken.

For the appellant there was a brief signed by *W. M. Bowe* and *J. A. Anderson,* attorneys, and *George B. Nelson,* of counsel, and oral argument by *Mr. Bowe.*

For the respondent there was a brief by *Bundy & Wilcox,* and oral argument by *R. P. Wilcox.*

Bashford, J.   The first question presented for determination relates to the alleged warranties found in statements P and Q, referred to in the statement of facts. Respondent claims that a breach of warranty S is sufficiently alleged in the answer, but we do not so construe the pleading. S embodies the statement that the insured had not had and did not have bronchitis. The answer sets out warranties P and Q, and alleges that the same are false in that the insured at the time of the acceptance of the policy and for a long time prior thereto had been suffering from chronic asthma and bronchitis. The rule is well settled in this state that in an action upon an insurance policy a breach of warranty is

not available as a defense unless expressly pleaded. *Goldman v. Fidelity & D. Co.* 125 Wis. 390, 104 N. W. 80. The proof admitted with respect to the ailments mentioned was competent in support of the breaches alleged, and could not therefore be considered as raising a new and distinct issue.

A policy of insurance should be construed the same as any other contract in order to ascertain the intention of the parties from the language employed. *Merrill v. Travelers' Ins. Co.* 91 Wis. 329, 64 N. W. 1039. All provisions, conditions, or exceptions which in any way tend to work a forfeiture should be construed most strongly against the party preparing the contract and for whose benefit they are inserted. *Appleton Iron Co. v. British Am. Assur. Co.* 46 Wis. 23, 1 N. W. 9, 50 N. W. 1100; *Weidner v. Standard L. & A. Ins. Co.* 130 Wis. 10, 110 N. W. 246. Any provision or exception which is uncertain or ambiguous in its meaning or is capable of two interpretations should receive that construction most favorable to the insured. *Cook v. Benefit League,* 76 Minn. 382, 79 N. W. 320; *Travelers' Ins. Co. v. Murray,* 16 Colo. 296, 26 Pac. 774. These familiar rules of construction will serve as a general guide for the consideration of the construction of the provisions here in question.

The statements in this policy with respect to the physical condition of the insured are declared to be warranties, and if they have been answered, and the answers are false, then there can be no recovery. *McGowan v. Sup. Ct. I. O. F.* 107 Wis. 462, 83 N. W. 775. Whether or not the answers are false is a question for the jury, if there is any conflict in the evidence. Are the statements here challenged to be construed as having been answered by the insertion of a check mark in the blank space where an exception should have inserted, if any was to be made? Or is it reasonable to infer that the check mark in the blank space was understood by the insured as a waiver of any response to the statement?

It is to be noted that the policy contains no warranty that the statements are fully and truly answered, a provision not infrequently found in such contracts.

The statements having been prepared by the insurer for its own protection and the spaces check-marked apparently by its own agent, the paper must be construed in the most favorable light permissible for the benefit of the plaintiff. If the statement was in the form of a question and not answered, or if the answer was ambiguous, then the question itself would be treated as having been waived. *First Nat. Bank v. Hartford F. Ins. Co.* 95 U. S. 678; *Daniels v. Hudson River F. Ins. Co.* 12 Cush. 416; *Phœnix L. Ins. Co. v. Raddin,* 120 U. S. 183, 7 Sup. Ct. 500. In the case last cited it is said:

"Where an answer of the applicant to a direct question of the insurers purports to be a complete answer to the question, any substantial misstatement or omission in the answer avoids a policy issued on the faith of the application. [Citing cases.] But where upon the face of the application a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial."

That an answer not wholly responsive cannot be regarded as a warranty was held in *Federal L. Asso. v. Smith,* 86 Ill. App. 427, and *Dilleber v. Home L. Ins. Co.* 69 N. Y. 256. *Dilleber v. Home L. Ins. Co.* is a leading case upon the subject. It was there held that where by a policy of life insurance the answers of the insured are made warranties, if a question is not answered there is no warranty that there was nothing to answer; and in the case of a partial answer the warranty cannot be extended beyond the answer. In that case there was annexed to the application a statement signed by the insured in which it was declared that the answers contained in the application "are warranted to be full, cor-

rect, and true, and that no circumstance is concealed or withheld in relation to the past or present state of his health," etc., and in which it was agreed that, if the answers were not in all respects full, true, and correct, the policy should be void. It is said in the opinion:

"When the language used in a policy may be understood in more senses than one, it is to be understood in the sense in which the insurer had reason to suppose it was understood by the assured. [Citing cases.] Conditions and provisos must be strictly construed against the insurers, because they have for their object to limit the scope and defeat the purpose of the principal contract, and, as the insurer prepares the contract and furnishes the language used, any ambiguity in the contract must be taken most strongly against him."

The court there held that the question was one of fact to be submitted to a jury whether the answer was honestly and fairly made. *Mackinnon v. Fidelity & C. Co.* 72 N. J. Law, 29, 60 Atl. 180, is strongly in point. The warranties were in substantially the same form as in the policy here under consideration—a general statement followed by an exception. There in the blank space was the word "no" where a check mark is here found. It was held that this word did not deny either of the component clauses of the statement. It is said in the opinion:

"Here we are dealing with a question propounded by an insurer as the basis of a warranty on the part of the insured, a breach of which will avoid the insurer's contract. Such questions are formulated by the insurer under circumstances that admit of their being clear and direct. The purpose for which they are to be used is thoroughly understood, and, presumably, they are the result both of experience and of forethought. On the other hand, they are submitted to applicants for accident insurance, who as a class are not experts in matters of this sort or in the construction of language by other than the simplest rules, to be answered under conditions that are, to say the least, none too favorable for critical examination. Under these circumstances, if by

reason of an ambiguity resulting from the form in which the question has been cast the answer to it may state the truth or may state a falsehood, according as the ambiguity is resolved, our decisions constrain us to adopt the construction that is most strongly against the party who is responsible for the ambiguity, and to that end our cases permit the insured to stand upon the strict form of the question put to him by the insurer."

*Dunbar v. Phenix Ins. Co.* 72 Wis. 492, 40 N. W. 386, supports this view. It is there held that if an insurance company receives an application for insurance with a material question therein unanswered or not fully answered, and issues its policy thereon, it thereby waives a provision in the policy avoiding it in case the facts called for by such question are not fully disclosed. *Hale v. Life Ind. & Inv. Co.* 65 Minn. 548, 68 N. W. 182, upholds an instruction given to the jury that the insured is bound to answer accurately so far as he undertook to answer, but that his warranty could not be extended beyond his answers as actually given.

Counsel for respondent, in support of the contention that the check marks are to be treated as a negative to the exception, refer to *Stewart v. Gen. Acc. Ins. Co.* 35 Pa. Super. Ct. 120. The schedule of warranties indorsed upon the policy in that case was substantially in the same form as in the instant case. There the line after the exception was left blank, while here the check mark is inserted. It was there held that no exception being inserted in the blank line was equivalent to a direct and unequivocal statement of a fact; that, "if the statement was to be regarded as qualified, the qualification must necessarily have been added." We are not prepared to yield assent to this conclusion, but we regard the cases as distinguishable. The check mark was a visible sign, made so as to attract attention and to carry some information. In the absence of any further proof upon

the subject, we are not prepared to say that the insured was obliged to treat the check mark as a negative to the exception, or that he might not reasonably have considered it a waiver of the statement or the answer thereto. The insured may have signed a written application which was the basis of these warranties, and which when produced may aid the court in the proper interpretation of this contract. As presented upon this record, we must hold that an ambiguity exists with respect to the conclusion to be drawn from the warranties contained in the policy with a check mark in the blank space after the statements, and that it is a question for the jury to determine whether the check marks are to be treated as a denial of any exception or as a waiver of the statement and any answer thereto.

"It is for the court to say in such a situation whether different minds may reasonably differ as to what was in fact intended, and, if so, for the jury to say where the truth lies." *Vilas v. Bundy,* 106 Wis. 168, 176, 81 N. W. 812.

In case of ambiguity in a written contract, and ambiguous words or terms are to be construed by extrinsic evidence or the surrounding circumstances, then the question is one for the jury. *Ganson v. Madigan,* 15 Wis. 144; *Bedard v. Bonville,* 57 Wis. 270, 15 N. W. 185; *Becker v. Holm,* 89 Wis. 86, 61 N. W. 307.

It is urged on behalf of the respondent in support of the judgment that it does not appear that the death of the insured was the result of "bodily injuries sustained through external, violent, and accidental means, independently of all other causes." The proof is undisputed that the insured received the accidental injury to his leg causing an abrasion of the skin, that an infection started at this place, and that he died fifteen days later from erysipelas or blood poisoning. The contention is that the accidental injury of itself would not have resulted fatally, but that death was due to an independent intervening cause, namely, the germs which en-

tered the system through the wound. It must be apparent, however, that but for the accidental injury there would have been no cause for infection; that but for the abrasion the disease germs could not have entered and produced the fatal result. The wound produced by the accident was therefore the proximate and sole cause of death. *Cary v. Preferred Acc. Ins. Co.* 127 Wis. 67, 106 N. W. 1055. Counsel for respondent insists that the words "independently of all other causes" do not mean the "sole proximate cause;" that there was an independent intervening cause, which resulted in the death of the insured, and therefore the defendant is not liable. We cannot adopt this interpretation of the language or the conclusion sought to be drawn from the testimony. The words employed in this policy are substantially the same as found in *Weidner v. Standard L. & A. Ins. Co.* 130 Wis. 10, 110 N. W. 246. In that case the insured was assaulted by a third person, causing the injury, through which bacteria entered, causing death from blood poisoning. The question there raised and decided was whether or not the assault was for the sole purpose of robbery within the terms of the policy, and this was held to be a question for the jury to determine. It was assumed in that case that, if death resulted from the assault in the manner indicated, the insurance company was liable. There could have been no recovery if, as contended here, the entry of bacteria into the system through the wound must be considered an independent cause. *Hall v. American M. Acc. Asso.* 86 Wis. 518, 57 N. W. 366, construes a policy which contains substantially the same language. The court there sustained the finding of the jury that the injury was the sole cause of death, construing it to mean that the injury was the sole and proximate cause of the apoplexy which intervened and which was the immediate cause of death. The intervening cause which follows as a natural, though not necessary, consequence of accidental injury cannot, therefore, be considered

an independent cause producing death under the terms of this policy. We think the language here used can have no more extensive meaning than the words "sole and proximate," which have so recently been interpreted by this court in the *Cary Case*. The view here expressed seems to be the more reasonable construction of this provision of the policy, and is fully supported by the authorities which follow.

Blood poisoning resulting from an abrasion of the skin on the toe by a new shoe causing the death of the insured was attributable to bodily injury effected by external, violent, and accidental means alone within the meaning of an accident policy. *Western C. T. Asso. v. Smith,* 85 Fed. 401, 29 C. C. A. 223. Pneumonia caused by taking cold while confined to bed as a result of an accident, when this would not have occurred had the person been in a normal state of health, was regarded as an accident. *Isitt v. Railway P. Assur. Co.* L. R. 22 Q. B. Div. 504. The sting of an insect is the proximate cause of death resulting from blood poisoning caused by the sting. *Omberg v. U. S. Mut. Acc. Asso.* 101 Ky. 303, 40 S. W. 909. It was there held that the death was caused through "external, violent, and accidental means," and not as a result of poison "in any form or manner" or of "contact with poisonous substances." *Delaney v. Modern Acc. Club,* 121 Iowa, 528, 97 N. W. 91, holds that where death results from disease which follows as a natural, though not necessary, consequence of a physical injury which is accidental, it is deemed a proximate cause of the injury and not of the disease, and within the requirements of a policy that death must result solely from accidental injury. *Carroll v. Fidelity & C. Co.* 137 Fed. 1012, is directly in point. The policy sued on insured "against disability or death resulting, directly and independently of all other causes, from bodily injuries sustained through external, violent, and accidental means." The insured engaged in an altercation with an-

other party and struck him in the mouth, causing an abrasion on his hand. Blood poisoning set in, caused by microbes in the mouth of the person receiving the blow. The arm of the insured was amputated and death ensued. A recovery was sustained. See, also, *Mardorf v. Acc. Ins. Co.* [1903] 1 K. B. 584.

We must hold, therefore, that where death results from disease which follows as a natural, though not the necessary, consequence of an accidental physical injury, it is within the terms of the accident policy, the death being deemed the proximate result of the injury and not of the disease as an independent cause.

The trial court held that there was a breach of the warranties above referred to upon the ground that the proof conclusively established that the insured was afflicted with bronchitis at the time the policy was accepted. As already stated, the testimony on this subject was admissible under the averments of the answer with respect to statements P and Q, and an amendment of the pleading is permissible to set up a breach of S. Statement S is claimed to be a denial by the insured that he had had or was then suffering from bronchitis and other diseases there mentioned. It becomes necessary, therefore, at this time to state the conclusion we have reached with respect to the terms employed in the statements mentioned if they shall be found to constitute warranties. If the jury determines that the exceptions to these statements were negatived by the insured, then P warrants that he never had any bodily infirmity, Q that he was in a sound condition physically, and S that he never had bronchitis. There are other representations in each of these statements, but it is not necessary to mention them as their truthfulness is not challenged. It is important here to determine the proper meaning to be given to the words mentioned when construed as warranties in an accident insurance policy. It must be presumed that the parties intended that the words should be

understood in their ordinary sense when used in common speech.

Bodily infirmity means a settled disease, an ailment that would probably result to some degree in the general impairment of physical health and vigor. It could not have been understood by the parties that by this statement the insured intended to warrant that during the sixty-five years of his life he had never suffered from any of the ills that human flesh is heir to. Temporary ailments from which there has been a full recovery and which leave no perceptible effect cannot reasonably be included in this term. Bodily infirmity, as used in an accident policy exempting the insurer from liability, only includes an ailment or disorder of a somewhat established or settled character, and not merely a temporary disorder arising from a sudden and unexpected derangement of the system. *Meyer v. Fidelity & Cas. Co.* 96 Iowa, 378, 65 N. W. 328; *Manufacturers' Acc. Ind. Co. v. Dorgan,* 58 Fed. 945, 7 C. C. A. 581.

A sound condition physically signifies an absence of bodily infirmity, and what has already been said applies to this statement. This term has been construed by this court in *Boyle v. N. W. Mut. R. Asso.* 95 Wis. 312, 70 N. W. 351. It is there said:

" 'Sound health,' as used with reference to an application for life insurance, has been defined to mean a state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously. The word 'serious' is not generally used to signify dangerous, but rather to define a grave, important, or weighty trouble."

A sound condition physically means the same as sound health, which does not mean perfect health.

"A mere temporary indisposition or ailment would not ordinarily be regarded as rendering the health unsound within the meaning of these words when used in an insurance contract. Speaking generally, they mean the absence of

any vice in the constitution, and of any disease of a serious nature, that have a direct tendency to shorten life; the absence of a condition of health that is commonly regarded as disease, in contradistinction to a temporary ailment or indisposition." *Packard v. Met. L. Ins. Co.* 72 N. H. 1, 54 Atl. 287.

Other decisions to the same effect are *Brown v. Met. L. Ins. Co.* 65 Mich. 306, 32 N. W. 610; *Manhattan L. Ins. Co. v. Carder*, 82 Fed. 986; *Plumb v. Penn Mut. L. Ins. Co.* 108 Mich. 94, 65 N. W. 611; *Dietz v. Met. L. Ins. Co.* 168 Pa. St. 504, 32 Atl. 119. Whether the insured was in a sound condition physically would depend upon the circumstances of each case, and would be a question for the jury to determine upon the evidence. *Packard v. Met. L. Ins. Co.* 72 N. H. 1, 54 Atl. 287; *Met. L. Ins. Co. v. Howle*, 68 Ohio St. 614, 68 N. E. 4; *Connell v. Met. L. Ins. Co.* 16 Pa. Super. Ct. 520.

In the leading case of *Barnes v. Fidelity Mut. L. Asso.* 191 Pa. St. 618, 43 Atl. 341, it is said in substance that good health does not mean absolute perfection, but is comparative, and, if the insured enjoys such health and strength as to justify the reasonable belief that he is free from derangement of organic functions or free from symptoms calculated to cause a reasonable apprehension of such derangement, and to ordinary observation and outward appearance his health is reasonably such that might with ordinary safety be insured and upon ordinary terms, the requirement of good health is satisfied. In that case it appeared that at the time of the payment of the premium the insured was in bed with a cold which developed into pneumonia, causing his death two days later. The court held that under these circumstances the question as to whether or not insured was in good health was for the determination of the jury.

The terms employed in statement S must be construed under the rules already stated. The warranty, if it be such,

that the insured had not had and was not then suffering from bronchitis must be given a reasonable interpretation in arriving at the intention of the parties. The order for nonsuit was based upon the conclusion of the court from the evidence that the insured had had bronchitis at some time in his life. We cannot agree with the view of the learned circuit judge that the proof established beyond controversy that the insured had ever had chronic bronchitis, or that if he had been so afflicted by the disease in an acute form the policy was necessarily avoided. The object of the parties was to insure against disability or death from accidental injury. The present physical condition of the insured as affected by previous diseases was a natural subject of inquiry as bearing upon the character of the risk and as tending to increase liability to accidents or of serious results from accidents. The information was doubtless sought and furnished with that purpose in the minds of both parties. Bronchitis, as a medical term, is defined by Webster as "inflammation, acute or chronic, of the bronchial tubes or any part of them." If the term is given its broadest significance, bronchitis would include every hard cold that affects the bronchial tubes or any part of them. We cannot assume that it was the intention of the parties to use this term in its broadest sense, as it would lead to results which are unreasonable if not absurd. Such a construction should not be adopted unless enforced by the words employed. *Cady v. Fidelity & C. Co.* 134 Wis. 322, 113 N. W. 967. We conclude that the word "bronchitis," as found in this policy, was used in its limited sense as meaning a chronic disease which would not readily yield to treatment and which tended to impair the health and strength of the insured; that it did not include an acute attack from which he had fully recovered at the time the policy was accepted.

As already intimated, we do not think the proof showed conclusively that the insured ever suffered from chronic

bronchitis. The testimony bearing on this subject is referred to in the statement of facts. The testimony of the attending physician left it somewhat uncertain whether the disease had become so pronounced and settled as to permanently affect the health at the time the policy was accepted. Two other witnesses intimately acquainted with the insured, and who saw him almost daily for months before and after that date, had never heard of his having bronchitis, and testified, in substance, that he attended regularly to his work and that his general health was good. It is presumed that if the disease had become settled so as to impair the strength and health of the insured it would have been perceptible to ordinary observation. The testimony given by the attending physician would doubtless have been excluded if seasonable objection had been made. *Boyle v. N. W. Mut. R. Asso.* 95 Wis. 312, 70 N. W. 351; *Green v. Nebagamain,* 113 Wis. 508, 89 N. W. 520. As it was received on the trial without objection it was entitled to full consideration, but should not have been accepted as conclusively establishing the existence of the disease. The question should have been submitted to the jury upon all the testimony on the subject. *Moulor v. Ins. Co.* 101 U. S. 708. The case cited is strongly in point. There the attending physician testified that the insured had been afflicted with scrofula and chronic asthma before the policy was issued, thereby falsifying statements in the application for insurance. There was, however, in evidence the statements of two medical examiners who attended the application, representing the insured was in perfect health and as never having any constitutional disease, and it was held that the case should have been submitted to the jury on all the evidence.

Counsel for respondent contends that the action was prematurely commenced. The policy provides that immediate written notice must be given to the company of any accident and injury for which a claim is to be made, that affirm-

ative proof of death must be furnished within two months thereafter, and that legal proceedings for recovery thereunder may not be brought before the expiry of three months from date of filing proofs at company's home office, nor brought at all unless begun within six months from the time of death.   Immediate written notice was furnished, as required, which was received at the company's home office March 8th.   An autopsy on the body had already been held at the instance of the insurer, and the fact of death and its cause definitely ascertained.   So far as the evidence discloses, no further proof was demanded, although it appears that the beneficiary verified a proof of claim April 19th, which was forwarded to the company.   Both proofs of claim were retained by the company, but the answer alleges that the last was not furnished within two months from the time of death, an objection not urged upon the attention of the court.   But treating the paper forwarded on April 19th as the affirmative proof of death, the respondent contends that the action could not be brought before the expiration of three months from that date.   The action was commenced on July 18, 1905.   This contention cannot be sustained, for the reason that, after the proofs of loss had been furnished the company and by it retained, it denied any liability under this policy.   Moreover, we are not prepared to say that affirmative proof of loss was not furnished at an earlier date.   A policy containing substantially the same provisions was under consideration upon like proof in *Van Eman v. Fidelity & C. Co.* 201 Pa. St. 537, 51 Atl. 177. It was there held that affirmative proof of death required by the policy to be furnished the company is given where the company is notified of death from an injury, and has its surgeon take part in a *post-mortem* examination.   It is there said:

"The condition does not provide that the proof is to be in writing, nor by whom it is to be furnished, but the evidence

is that such proof, in writing, did reach the company, which acted upon it by having its own surgeon take part in the *post-mortem* examination."

Under the rule of that case affirmative proof was seasonably furnished and the action was commenced more than three months thereafter. The decision of this point, however, is placed upon the ground that the denial of liability was a waiver of the provision as to the time of bringing the action. Stipulations in policies of insurance that the loss should be paid within a specified time after proofs of loss are furnished and postponing action in the meantime are for the purpose of enabling the insurer before paying the loss to make a full investigation with a view of determining his liability and its extent and to discharge the obligation, if any, without the costs of suit. If the insurer repudiates any obligation under the policy there can be no reason for further delay, and it cannot be prejudiced by an immediate action. Hence it is held both on reason and authority that a denial of any liability on a policy is a waiver of the right of the company to have the stipulated time before suit is begun, and that the action may be commenced at once. *Hand v. Nat. L. S. Ins. Co.* 57 Minn. 519, 59 N. W. 538; *Merritt v. Cotton States L. Ins. Co.* 55 Ga. 103; *Whitten v. New Eng. L. S. Ins. Co.* 165 Mass. 343, 43 N. E. 121; *Tex. Mut. L. Ins. Co. v. R. A. Brown & Co.* 2 Posey (Tex.) Unrep. Cas. 160; *Columbus Mut. L. Asso. v. Plummer,* 86 Ill. App. 446; *U. S. Cas. Co. v. Hanson,* 20 Colo. App. 393, 79 Pac. 176; *Binder v. Nat. M. Acc. Asso.* 127 Iowa, 25, 102 N. W. 190. On the record here presented we conclude that the learned circuit court erred in granting the nonsuit.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded for a new trial.